# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Professor Michael Moates | Case No.: 22-cv-04478-JD |
| Licensed Psychologist | |
| Plaintiffs | **AMENDED COMPLAINT** |
| v. | |
| META PLATFORMS, INC. | |
| DBA: Facebook | |
| DBA: Instagram | **JURY TRIAL DEMANDED** |
| DBA: Meta Quest (Oculus) | |
| DBA: Facebook Messenger | |
| DBA: CrowdTangle | |
| DBA: Whatsapp | |
| DBA: Facebook Holdings | |
| DBA: Facebook Operations | |
| DBA: Facebook Payments | |
| DBA Facebook Technologies and; | |
| Mark Elliot Zuckerberg | |
| CEO / Controlling Shareholder | |
| Defendants | |

## NATURE OF THE CASE

Plaintiff Michael Moates brings this action individually. Plaintiff brings this action against Defendants Meta Platforms Inc, its subsidiaries, and Mark Elliot Zuckerberg. The causes of action are related to software products, physical products, stockholder securities infractions, and other federal and state statute violations.

## PARTIES

1. Michael Moates is a Licensed Psychologist and Adjunct Professor of Psychology residing in Fort Worth, Texas. Plaintiff brings the suit on behalf of himself.

2. Meta Platforms Inc ("Meta") is a Delaware corporation and multinational technology conglomerate, having its principal place of business in Menlo Park, California. Meta develops and maintains social media platforms, communication platforms, and electronic devices. These platforms and products include Facebook (its self-titled app, Messenger, Messenger Kids, Marketplace, Workplace, etc.), Instagram (and its self-titled app), and a line of electronic virtual reality devices called Oculus Quest (soon to be renamed "Meta Quest"). Meta's subsidiaries include, but may not be limited to: Facebook Holdings, LLC (Delaware); Facebook Operations, LLC (Delaware); Facebook Payments Inc. (Delaware); Facebook Technologies, LLC (Delaware); FCL Tech Limited (Ireland); Instagram, LLC (Delaware); Novi Financial, Inc. (Delaware); Runways Information Services Limited (Ireland); Scout Development LLC (Delaware); Siculus, Inc. (Delaware); and a dozen other entities whose identity or relevance is presently unclear.

3. Facebook Holdings, LLC ("Facebook 1") was incorporated in Delaware on March 11, 2020, and is a wholly owned subsidiary of Meta Platforms, Inc. Facebook 1 is primarily a

holding company for entities involved in Meta's supporting and international endeavors, and its principal place of business is in Menlo Park, California.

4. Facebook Operations, LLC ("Facebook 2") was incorporated in Delaware on January 8, 2012, and is a wholly owned subsidiary of Meta Platforms, Inc. Facebook 2 is likely a managing entity for Meta's other subsidiaries, and its principal place of business is in Menlo Park, California.

5. Facebook Payments, Inc. ("Facebook 3") was incorporated in Florida on December 10, 2010, and is a wholly owned subsidiary of Meta Platforms, Inc. Facebook 3 manages, secures, and processes payments made through Meta, among other activities. Its principal place of business is in Menlo Park, California.

6. Facebook Technologies, LLC ("Facebook 4") was incorporated in Delaware as "Oculus VR, LLC" on March 21, 2014, and acquired by Meta on March 25, 2014. Facebook 4's principal place of business is in Menlo Park, California. It develops Meta's virtual and augmented reality technology, such as the Oculus Quest line of products (soon to be renamed "Meta Quest"), among other technologies related to Meta's various platforms.

7. Kevin Systrom and Mike Krieger in October 2010 founded Instagram, LLC ("Instagram"). In April 2021, Meta purchased the company for $1 billion (later statements from Meta indicated the purchase price was closer to $2 billion). Meta reincorporated the company on April 7, 2012, in Delaware. Currently, the company's principal place of business is in Menlo Park, CA. Instagram is a social media platform tailored for photo and video sharing.

8. Mark Elliot Zuckerberg is the Chief Executive Officer and Controlling Shareholder of Meta Platforms Inc. and its subsidiaries.

## JURISDICTION

9. This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, and Plaintiff and Defendants are residents of different states.

10. This Court has specific personal jurisdiction over Defendant Meta Platforms Inc. and its subsidiaries because these Defendants transact business nationwide. Defendants purposely avail themselves of the benefits of transacting business in Texas and California.

11. This Court has specific personal jurisdiction over Mark Elliot Zuckerberg because his primary residence is in California.

12. Defendants have earned millions of dollars in annual revenue from their Texas-related activities over the last several years arising from the use of their defective and inherently dangerous social media products by Texas residents, including Plaintiff.

## FACTUAL ALLEGATIONS

**Disabling of Accounts**

13. Plaintiff Michael Moates created a Facebook account on 13 July 2014. Moates is subject only to the Statement of Rights and Responsibility (Terms of Service "TOS"), enacted on November 15, 2013. At no time did Plaintiff agree to any subsequent TOS.

14. The Facebook account above the "controlling account" was the cause of the unwarranted and contract-breaching suspension of access to Instagram, Oculus, Whatsapp, CrowdTangle, and Messenger.

15. On 20 October 2020, Facebook disabled the Plaintiffs' controlling account which caused his Instagram, Oculus, Whatsapp, CrowdTangle, and Messenger accounts to be disabled without cause.

16. Disabling the controlling account subsequently blocked the Plaintiffs' access to multiple websites that use the "login with the Facebook feature." Examples include Spotify, Foursquare, Zoom, Buzzfeed, Dell, Twitch, Nike, and thousands of others.

17. Subsequently, disabling the controlling account also blocked the Plaintiff's access to the use of his physical product, Oculus Go and Oculus Quest.

18. Disabling the controlling account also blocked the Plaintiffs' access to communicate with schools and employers.

19. Subsequently, disabling the controlling account also blocked the Plaintiffs' access to proprietary business analytics.

20. After all this took place on October 20th, 2020, Plaintiff reached out to Carolyn

21. Everson (Vice President, Facebook) said she "So sorry this happened" and hoping for some resolution." She included two of her staff members Meghan Orbe and Conrad Gibson on her email. Conrad responded very quickly asking for some details and said Til be in touch once I have an update from the account team." Conrad responded two days later stating "Apologies for the delay as I worked with our team on your request. I heard back this morning and it seems that your accounts were disabled permanently and, due to policy guidelines, they are unable to share why the accounts were deactivated. I am so sorry this happened to you. I asked for more information, but they were unable to share with me. I wish I could give you a better explanation, but unfortunately, we have these rules in place to protect a user s privacy. I know that you had a lot of photos saved to your

accounts that you wanted to access. They provided me with the following information on how to request data from a closed account." The links Conrad provided were broken and did not work. The Plaintiff subsequently reached out and was given a new link. Upon filling out the request in the new link for his data Facebook said "The account associated with the email address you provided to us has been disabled for of our Terms of Service. They did not provide the data they admit belongs to him.

22. Plaintiff found out via Lisa Bart Dolan (Politics and Government Outreach Associate Manager), that "We will remove any Facebook Pages, Groups and Instagram accounts representing QAnon, even if they contain no violent content. This is an update from the initial policy in August that removed Pages, Groups and Instagram accounts associated with QAnon when they discussed potential violence while imposing a series of restrictions to limit the reach of other Pages, Groups and Instagram accounts associated with the movement. Pages, Groups and Instagram accounts that represent an identified Militarized Social Movement are already prohibited. And we will continue to disable the profiles of admins who manage Pages and Groups removed for violating this policy, as we began doing in August. You can read more about this policy here: https://about.fb.eom/news/2020/08/addressin -movementsand-or anizations-tied-to-violence/." Plaintiff was being held accountable for an updated "policy" (contract) he did not agree to. Further, she admitted that it did not matter if "they contain no violent content." By holding the Plaintiff to a subsequent contract/policy change to their Statement of Rights and Responsibilities, now Community Standards that he did not agree to violated the 9th Circut Court of Appeals decision in Douglas v US District Court and Talk America (2007). The court held "a party can't unilaterally change

    the terms of a contract; it must obtain the other party's consent before doing so." It did not get consent from the Plaintiff prior to changing its contractual obligations.

23. Further, Plaintiff was able to confirm her statement via subsequent court filings (4:20-cv-00896-ALM-KPJ, dkt 28) that the reason Meta had disabled his account was because he had a page titled "QAnon." They did not state any content concerns other than the name of the page itself which they claim is a violation of "Terms of Service." However, this was not in the Facebook Statements of Rights and Responsibilities as of 15 November 2013. that Plaintiff agreed to. Per Douglas v US District Court and Talk America Inc., "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R., 549 F.2d 114, 118 (9th Cir. 1976). This is because a revised contract is merely an offer and does not bind the parties until it is accepted. Matanuska Valley Farmers Cooperating Ass'n v. Monaghan, 188 F.2d 906, 909 (9th Cir. 1951).

**Misleading Statements**

24. In the 2013 Facebook Data Use Policy ("DUP"), it states "You can access and correct most of your personal data stored by Facebook." But they have restricted Plaintiffs' access to do so.

25. The DUP also states "Unless we make a change for legal or administrative reasons, or to correct an inaccurate statement, we will give you seven (7) days to provide us with comments on the change. After the comment period, if we adopt any changes, we will provide notice (for example, on the Facebook Site Governance Page or in this policy) of the effective date.[1]" Facebook as not complied with this contractual obligation.

---

[1] https://web.archive.org/web/20130915091726/https://www.facebook.com/about/privacy/other

26. Additionally, the DUP states "Anyone may also contact us through this help page.[2]" Despite this, there is no way to contact Facebook through this help page.

27. Throughout the DPU, Facebook refers to "your Facebook data," "your information," and "your personal information.[3]" Despite this, Facebook does not really view your data being yours. They deem it acceptable to hold "your Facebook data" hostage when they decide they do not like you.

28. From August 29th till the date of the disabled account, Plaintiff had invested $10,546 on advertising with Facebook Inc. to build a following through "likes, followers, and engagement" on multiple of his pages that allow him to earn income via engagement of posts. Reach is determined by the number of followers and likes. When someone spends money to build an audience they invest, and that money is returned through different types of engagements. In this case, Plaintiff used the Facebook ad system for their Engagement ads. According to their website, the description of these types of ads is "Get more people to follow your Page or engage with your posts through comments, shares, and likes. You can also choose to optimize for more event responses or offer claims. It is important to note that Plaintiff alleges that the word your implies that he retains ownership of the page that he is investing in. Dictonary.com defines "your" as one's (used to indicate that one belongs to oneself or to any person. The Plaintiff asserts that he retains ownership of these pages and Facebook is simply a host for these pages. All data, followers, engagement, etc. belong to the Plaintiff. It s important to note that Facebook is not a free service. You pay for their service in multiple ways. You pay when they use your data for ads. You pay for the right to have an audience when you run ads that build

---

[2] https://web.archive.org/web/20130915091726/https://www.facebook.com/about/privacy/other
[3] https://web.archive.org/web/20130915091726/https://www.facebook.com/about/privacy/other

your page following and subscribers. The Defendants willingly took his money, knowing very well that they would disable his Facebook account in the coming weeks. They continued to take his money without consent, even after disabling his accounts.

**Illegal Survaliance and Online Tracking**

29. Since 2013, Meta Pixel (formerly known as Facebook Pixel) has illegally tracked the web history of millions. Facebook has used this tool to illegally surveil for unrelated purposes in violation of both state and federal statutes. This includes accessing protected health information.

<b><u>CAUSES OF ACTION</u></b>

**State of Texas**

**Breach of Contract**

30. Plaintiff realleges all statements contained therein.

31. Defendant Meta violated its contract with Plaintiff by way of the following:

    a. Defendant Meta refuses to give Plaintiff his data despite stating in his contractual agreement that "You own all of the content and information you post on Facebook…" - 2013 Statement of Rights and Responsibilities, #2[4]

    b. Defendant Meta did not follow through with its promise to allow for comment on changes to the policy. The SRR stated, "Unless we make a change for legal or administrative reasons, or to correct an inaccurate statement, we will provide you with seven (7) days notice (for example, by posting the change on the Facebook Site Governance Page) and an opportunity to comment on changes to this Statement." - 2013 Statement of Rights and Responsibilities, #14

---

[4] https://web.archive.org/web/20141103023819/https://www.facebook.com/terms

32. Defendant Meta violated its contract with Plaintiff by disabling the accounts without cause and without reason consistent with their 2013 community standards which require: violence and threats, self-harm, bullying and harassment, hate speech, graphic content, nudity and pornography, false identity, intellectual property, phishing and spam, and security. - 2013 Community Standards[5]

33. Defendant Meta violated its contract with Plaintiff by disabling the pages without reason consistent with their 2013 page terms.[6]

34. Defendant Meta violated its contract with Plaintiff by disabling the ability to use his Oculus Go and Oculus Quest[7]. The contract states, "We reserve the right to terminate your right to access and use the Services if you violate these Terms or any other terms or policies referenced herein, or if you otherwise create risk or possible legal exposure for us." See 2018 Oculus Terms of Service, #22. A Facebook page titled "QAnon" has no basis for disabling gaming devices with separate contracts.

**Promissory Estoppel**

35. Plaintiff realleges all statements contained therein.

36. Prior to purchase, Meta made a promise to provide Plaintiff with two gaming systems, the Oculus Go, and the Oculus Quest 2. Plaintiff relied on the fact that when he bought these devices, he would be able to enjoy such play and would not be blocked from using them.

37. Meta subsequently made them inoperable with no good cause.

38. Defendant Meta made a promise contractually that the data Plaintiff created on their platform belonged to him. As such, he is entitled to that data. Defendants violated their

---

[5] https://web.archive.org/web/20130831232149/https://www.facebook.com/communitystandards
[6] https://web.archive.org/web/20141104120458/https://www.facebook.com/page_guidelines.php
[7] https://web.archive.org/web/20190207193611/https://www.oculus.com/legal/terms-of-service/

promise to his ownership of the data by blocking him from downloading a copy of the data.

**Fraud - Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Electronic Fund Transfer Act, Regulation E**

39. From August to October the Plaintiff spent $10,546 on advertising with Facebook Inc.

40. The Defendant advertised these ads as giving the Plaintiff the ability to get people engage with your posts through comments, shares and likes. They disabled his account so he could not get this benefit but still charged him. The Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

41. The Defendant committed a second type fraud. They did so by placing ads in front of the Plaintiff that caused him to follow certain pages that have now lost their investment from the advertisement he clicked on.

42. The Defendant made multiple misstatements about products and how you can use them. For example, the Defendant advertised a private account for Oculus that was unrelated to any Facebook account. The subsequently changed their mind and required you to use Facebook. They then invalidate the device by making it so you cannot use it if your Facebook account is disabled. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. The sold a product under false pretenses then rendered it useless.

43. Finally, the Defendant continued to charge the plaintiff without consent after he revoked their rights to automatic charges on his account. Under the Restore Online Shoppers'

Confidence Act, companies are required to Provides a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account. But they did the opposite. They disabled his access to stop these charges and after receiving in writing the request to stop they continued, trying different amounts to see what would go through. In addition, the Electronic Fund Transfer Act provides recourse when the law is violated. It was designed for protection from unauthorized electronic transfers.

**Liability - Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Uniform Trade Secrets Act**

44. The aforementioned banned accounts (that are owned by the Plaintiff and stolen by Facebook) caused the Plaintiff to lose his audience and revenue from said audience. The Defendant willingly entered into a contract to provide services. They then tried to change the rules in an attempt to invalidate the contract so they could censor him. There are 3 elements to the UTSA, subject matter involved must qualify for trade secret protection, holder of the subject matter must establish that reasonable precautions were taken to prevent disclosure of the subject matter, and the trade secret holder must prove that the information was misappropriated or wrongfully taken. The Plaintiff asserts that all 3 elements are met. For the first prong, we talk about customer lists and analytical data which are covered under the law. For the second, reasonable precautions were taken to protect this information including activating 2 factor verification before signing into the Plaintiffs account. Third, the Plaintiff has provide evidence that the data from these accounts where his in the form of your pages and your groups."

45. The aforementioned banned accounts (that are owned by the Plaintiff and stolen by Facebook) caused the Plaintiff to lose value in his Oculus device he purchased from the company. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. The sold a product under false pretenses then rendered it useless. 3. The banned accounts has caused the Plaintiff emotional distress including anxiety and depression due to loss of all data, revenue, and communications.

**Violation of Civil Rights - Violation of the Americans with Disabilities Act**

46. Facebook is a physical place and an online forum. You can physically visit Facebook as a consumer. For example, you can see in a video with Laura Loomer that Facebook engages with customers. In fact, they have tablets laid out where you can sign in and communicate with their staff. Due to the fact that they have a campus where they allow people to come in and write complaints, they are a physical public place and are subject to the Americans with Disabilities Act. Another example of Facebook having a public physical place is when they host Facebook Communities SummitsThey are clearly a public place. In Guillermo Robles v Domino s Pizza, the Ninth Circuit Court of Appeals found The panel held that the ADA applied to Domino s website and app because the Act mandates that places of public accommodation, like Domino's, provide auxiliary aids and services to make visual materials available to individuals who are blind. Even though customers primarily accessed the website and app away from Domino's physical restaurants, the panel stated that the ADA applies to the services of apublic accommodation, not services in a place of public accommodation. By this opinion, Facebook is subject to the ADA across its websites not just in person.

47. The Plaintiff suffers from Anxiety, Depression, Dysgraphia, Insomnia, and ADHD. These effect his day-to-day life. The Defendant violated the Americans with Disabilities Act when they did not provide reasonable accommodations and discriminated against the Plaintiff by the choosing to exclude and segregate him without cause. To date, they have no policies or procedures in place for those with mental health issues that are covered under the ADA laws. See (Guillermo Robles v Dominos Pizza, LLC) Title III of the ADA, the section of the ADA in question, says that companies can t discriminate against disabled individuals in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

48. The Plaintiff also suffered from discriminatory actions by Facebook when they targeted him for ads based on disabilities or behaviors of disabilities that he has. For example, the Defendant targeted the Plaintiff for Cerebral and Vyvanse based on disability or behaviors of a disability. They will claim that they have a rule against this. But the problem is, if they don t enforce the rule then it doesn't matter whether or not they have the rule. Especially, when Facebook s ad review team approves these kinds of ads. Having a rule in place does not remove liability if you don t enforce that rule.

**Data Theft - Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act 1.**

49. Defendant claim You can download a copy of your data at any time in their terms of service. However, this is not true. If this were the case, the Plaintiff would have access to his data. What they really mean is you have access to your data at any point that we allow you to have it. They have stolen and hijacked the Plaintiffs data across all of the

platforms. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. Making statements that are inaccurate are violation of Texas law. The Plaintiff not only asserts for this purpose that he was a regular Facebook product user but that he paid to use said services

50. The Defendant have tools that would allow them to release this data but they continue to hold it hostage even though they admit it belongs to the Plaintiff.

51. Again, the Defendant has manipulated its Terms of Service which used to state, you own all of the content and information you post on Facebook, and you can control how it is shared. The removed this sometime between March 2018 and September 2020. The reasoning behind this is because they don t want you to have access to your own data. When the Plaintiff entered into Facebooks Terms of Service, they allowed voting by members on policies, they took input from the public, and they posted proposed changes for comment. They now make changes and attempt to hide them from the public in an effort to not be transparent. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. Making statements that are inaccurate are a violation of Texas law. The Defendant continue to hold the Plaintiffs data hostage.

52. The Defendant assert multiple times and various ways that it is your content, and they are your pages and your groups. They acknowledge the content is owned by you. They then unilaterally disable your account without cause and withhold access to the data that belongs to you. It's important to know that they have the ability to produce this data but

choose not to. As more time goes on and this data is not produced it causes more damage. They essentially hold your data hostage without any way to get it back even though they claim that you own it. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. 5. The Defendant created an agreement where they would allow for due process but failed to allow the Plaintiff that due process. The Plaintiff does not have the ability to seek review from the Oversight Board as required by Facebook rules. Again, the Texas Deceptive Trade Practices Consumer Protection Act states false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. The Plaintiff has the right to have the Oversight Board review actions taken by Facebook, but they are making it impossible. Furthermore, they invoked the right to due process but then took it away when it suited them.

## PRAYER FOR RELIEF

**Accordingly, Plaintiff seeks injunctive relief in court to end Facebook s unreasonable and unlawful practices. Facebook s conduct has caused and continues to cause financial and emotional harm.**

**1. The conduct of the Defendant described above is outrageous. The Defendant conduct demonstrates a lack of respect for the law and shows that they are interested in only earning a profit. They have committed theft, fraud, civil rights violations, and many other violations of the law.**

**WHEREFORE, the Plaintiff respectfully pray for a judgment against the Defendant for:**

**1. Injunctive and equitable relief as the Court deems appropriate including:**

    **i. Requiring Defendant reactivate all accounts on the products; and**

    **ii. Providing data from all accounts; and iii. Providing a court order stating that the Defendant cannot use its anti-trust violations to cross-platform target users;**

**2. Compensatory damages to be paid to Plaintiff, according to proof at trial;**

**3. Punitive damages as the court deems appropriate;**

**4. That Facebook s acquisition of Instagram be adjudged to be in violation of Section 7 of the Clayton Act, 15 U.S.C.**

**5. That Facebook s acquisition of WhatsApp be adjudged to be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;**

**6. Injunctive relief in court to end Facebook s unreasonable and unlawful practices. Facebook's conduct has caused and continues to cause financial and emotional harm;**

**7. Any other relief as the court deems appropriate.**

**Respectfully,**

**Prof. Michael Moates, Psychologist**

**254-966-2837**

**[mike@cpmht.com](mailto:mike@cpmht.com)**

**6004 Oakland Bend Drive #116**

**Fort Worth, Texas 76112**

**CERTIFICATE OF SERVICE:** The Plaintiff certifies to the court that the counsel of record has been sent the response via electronic mail which was consented to by the Defendant.

**Prof. Michael Moates, Psychologist**

254-966-2837

mike@cpmht.com

**6004 Oakland Bend Drive #116**

**Fort Worth, Texas 76112**