JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 March Road
Menlo Park, CA 94025
Telephone: (650) 614-7470
Facsimile: (650) 614-7401

MELISSA LEVIN (SBN 328146)
melissalevin@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOATES,<br><br>                Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC. et al.,<br><br>                Defendants. | Case No. 3:22-cv-04478-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MEMORANDUM POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: March 9, 2023<br>Time: 10:00 am<br>Dept: 19<br>Judge: Hon. James Donato |

## NOTICE OF MOTION AND RELIEF SOUGHT

PLEASE TAKE NOTICE that on March 9, 2023, at 10:00 a.m., or as soon thereafter as may be heard by the Honorable Judge James Donato, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Meta Platforms, Inc. and Mark Zuckerberg will and hereby do move to dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted and some of Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the proposed order filed concurrently herewith, Defendants' Request for Judicial notice and Levin Declaration in support, all pleadings, and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: January 23, 2023

JACOB M. HEATH
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  ___/s/ Jacob M. Heath___
JACOB M. HEATH
Attorney for Defendant
Meta Platforms, Inc.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III. LEGAL STANDARD ......................................................................................... 3

IV.  ARGUMENT ...................................................................................................... 3

   A. The Complaint Fails to State Any Cause of Action Against Defendants. .................... 3

       1. The Complaint fails to state any claim against Mr. Zuckerberg. ...................... 3

       2. First Cause of Action – Breach of Contract. ...................................................... 4

       3. Second Cause of Action – Promissory Estoppel. ............................................... 6

       4. Third Cause of Action – Fraud. .......................................................................... 6

       5. Fourth Cause of Action – "Liability". ............................................................... 8

       6. Fifth Cause of Action - Americans with Disabilities Act. .............................. 10

       7. Sixth Cause of Action - "Data Theft" ............................................................. 11

   B. Section 230 of the Communications Decency Act Bars Plaintiff's Claims. ................ 12

       1. Meta is an "Interactive Computer Service Provider." ...................................... 13

       2. The content at issue was provided by another information content provider. . 13

       3. Each of Plaintiff's claims seeks to treat Meta as a "publisher" or "speaker" of the third-party content. ................................................................................... 14

   C. Plaintiff Should Not Be Granted Leave To Amend. .................................................... 15

V.   CONCLUSION ................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Appling v. Wachovia Mortg., FSB,*
5
    745 F. Supp. 2d 961 (N.D. Cal. 2010) ........................................................................ 4

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 3

7

*Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.,*
8
    661 S.W.2d 933 (Tex. 1983) ........................................................................................ 12

9

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ............................................................................... 12, 14
10

11

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
    873 F. Supp. 2d 1192 (N.D. Cal. 2012) ..................................................................... 8, 9

12

*Brock v. Zuckerberg,*
13
    2021 WL 2650070 (S.D.N.Y. June 25, 2021) .............................................................. 3

14

*C.B. v. Sonora Sch. Dist,*
    691 F. Supp. 2d 1123 (E.D. Cal. 2009) ....................................................................... 11
15

16

*Calise v. Meta Platforms, Inc.,*
    2022 WL 1240860 (N.D. Cal. April 27, 2022) ........................................................... 13

17

*Caraccioli v. Facebook, Inc.,*
18
    167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
    2017) ................................................................................................................... 5, 12, 14
19

*Children's Health Defense v. Facebook, Inc.,*
20
    546 F. Supp. 3d 909 ...................................................................................................... 4

21

*CleanFish, LLC v. Sims,*
22
    2020 WL 1274991 (N.D. Cal. March 17, 2020) .......................................................... 9

23

*Cross v. Facebook, Inc.,*
    14 Cal. App. 5th 190 (2017) .................................................................................... 5, 13

24

*Damner v. Facebook, Inc.,*
25
    2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ........................................................... 11

26

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) *(en banc)* .................................................................. 14
27

28

ii

*Gomez v. Gates Ests., Inc.*,
    2022 WL 458465 (N.D. Cal. Feb. 15, 2022) ................................................................. 10

*Gray v. Preferred Bank*,
    2010 WL 11508777 (S.D. Cal. June 10, 2020) ............................................................... 7

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ............................................................ 4, 14

*Izsack v. Wells Fargo Bank, N.A.*,
    2014 WL 262126 (N.D. Cal. Jan. 23, 2014) ................................................................. 6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .................................................................................... 15

*King v. Facebook Inc.*,
    2022 WL 1188873 (N.D. Cal. April 20, 2022) ........................................................ 5, 12

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...................................................................................... 3

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .................................................. 3, 4, 8, 13

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (*en banc*) .................................................................. 15

*MacRae v. HCR Manor Care Services*,
    2014 WL 12588464 (C.D. Cal. Oct. 30, 2014) ............................................................ 4

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) .................................................................................... 3

*Moates v. Facebook, Inc., et al.*,
    Case No. 4:21-cv-694-ALM-KPJ, ECF No. 27 .......................................................... 2

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ........................................................................ 5, 6, 12, 13

*Nat'l Fed'n of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ...................................................................... 10

*Park v. Webloyalty.com, Inc.*,
    2014 4829465 (S.D. Cal. Sept. 29, 2014) ................................................................... 8

*Perfect 10, Inc. v. CCBill LLC*,
    481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of*
    *reh'g*, 488 F.3d 1102 (9th Cir. 2007) ...................................................................... 12

- iii -

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ................................................................................. 15

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019) ................................................................................. 10

*Shahangian v. Bank of Am. Nat'l Ass'n*,
   2015 WL 12696038 (C.D. Cal. Dec. 1, 2015) .......................................................... 7

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526, 697 Fed.
   Appx. ................................................................................................................ 13, 14

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
   40 F. Supp. 3d 1191 ................................................................................................. 7

*Sunnyside Development Co. v. Opsys Ltd.*,
   No. C 05-0553, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ................................ 12

*Top Agent Network, Inc. v. Zillow, Inc.*,
   2015 WL 7709655 (N.D. Cal. April 13, 2015) ......................................................... 9

*Twit, LLC v. Twitter, Inc.*,
   2018 WL 2431474 (N.D. Cal. May 30, 2018) .......................................................... 6

*US Ecology, Inc. v. State*,
   129 Cal. App. 4th 887 (2005) .................................................................................. 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................. 7

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ......................................................... 4, 5, 10

*Zimmerman v. Facebook, Inc.*,
   2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) ....................................................... 14

**Statutes**

47 U.S.C. § 230 ............................................................................................................ 13

47 U.S.C. § 230(c)(1) ............................................................................... 12, 13, 14, 15

47 U.S.C. § 230(f)(2) .................................................................................................. 13

Americans with Disabilities Act ...................................................................... 1, 3, 10, 14

California Uniform Trade Secrets Act ............................................................................ 1, 8

Communications Decency Act § 230 .................................................................... *passim*

- iv -

Electronic Fund Transfer Act ................................................................................................ 3, 8

Lanham Act ........................................................................................................................... 3, 11

Restore Online Shoppers' Confidence Act .............................................................................. 8

ROSCA .................................................................................................................................... 8

Texas Deceptive Trade Practices Act ..................................................................................... 3, 7

**Other Authorities**

Rule 9(b) .................................................................................................................................. 7

Rule 12(b)(6) ........................................................................................................................... 3

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-CV-04478-JD

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    **INTRODUCTION**

3       Plaintiff Michael Moates brings this action against Meta Platforms, Inc. ("Meta") and

4 Meta's CEO and Chairman Mark Zuckerberg[1], purporting to assert causes of action for breach of

5 contract, promissory estoppel, fraud, "data theft," as well as violations of the Americans with

6 Disabilities Act and the Uniform Trade Secrets Act.  While various accusations are scattered

7 throughout the Amended Complaint, each of Plaintiff's claims seeks to hold Defendants liable for

8 disabling Plaintiff's Facebook account, which he calls his "controlling account," in October 2020.

9 As established herein, Plaintiff's Amended Complaint fails in its entirety to assert a cause of

10 action for which relief can be granted.

11       As to Mr. Zuckerberg, Plaintiff has not pled any specific facts to show why Mr.

12 Zuckerberg is individually liable for any of the alleged causes of action. Crucially, Plaintiff has

13 not and cannot allege facts to establish that Mr. Zuckerberg is the alter ego of Meta or anything

14 that would warrant piercing the corporate veil.

15       As to all Defendants, Plaintiff has failed to allege facts sufficient to assert any cause of

16 action.  Each of Plaintiff's claims is replete with deficiencies. For example, Plaintiff's breach of

17 contract claim fails because Plaintiff has not alleged a provision in the applicable Facebook

18 Terms of Service that Defendants violated by disabling Plaintiff's Facebook account.  Further,

19 Plaintiff's fraud-based claims fail because Plaintiff has not adequately alleged any of the requisite

20 prima facie elements—namely, that Defendants made a false representation, that Defendants

21 knew the representation was false at the time it was made, that it was intended to defraud

22 Plaintiff, or that Plaintiffs relied on any representation. And Plaintiff's Americans with

23 Disabilities Act ("ADA") claim fails because Meta and the Facebook service itself are not a place

24 of public accommodation.

25       Moreover, each of Plaintiff's claims is barred by Section 230 of the Communications

26

27 [1] While the allegations in Plaintiff's Amended Complaint are directed at Meta, Plaintiff lists numerous other "DBA" defendants, including, among others, Facebook Payments, CrowdTangle, Meta Quest (Oculus), and "CEO / Controlling Shareholder."  Meta moves to dismiss on behalf of all named defendants (together, "Defendants").

28

- 1 -

1  Decency Act ("Section 230"), which protects interactive service providers like Meta from claims

2  based on removal of user content or users from its service.  For these reasons, this Court should

3  dismiss Plaintiff's entire Amended Complaint with prejudice.

4  **II.    BACKGROUND**

5          Defendant Meta and its Facebook service ("Facebook") help give people the power to

6  build community and bring the world closer together.  Meta's relationship with the people who

7  use Facebook—including Plaintiff—is governed by the Facebook Terms of Service to which all

8  users agree when creating a Facebook account.  Plaintiff Michael Moates claims to be a user of

9  Facebook and various other Meta-owned services, including Facebook Messenger, Instagram,

10  Oculus, WhatsApp, and CrowdTangle.  Amended Complaint ("Compl.") ¶ 15.  As part of the

11  user-registration process in place when Plaintiff opened his account in 2014, Plaintiff was

12  required to agree to Facebook's Terms of Service.  *See* Request for Judicial Notice ("RJN"),

13  Levin Declaration in Support of RJN ("Levin Decl."), Ex. A ("2020 Facebook Terms of

14  Service").  Although Plaintiff claims he is *only* subject to the Terms of Service applicable when

15  he created his account in 2014, *see* Compl. ¶ 13, the Terms of Service when Plaintiff created his

16  account require a user to acknowledge that, by continuing to use Facebook, the user accepts

17  modifications to those terms, which are posted on Facebook.  *See* RJN, Levin Decl., Exs. A, B.[2]

18  In any event, neither the Terms of Service applicable when Plaintiff created his account in 2014

19  nor the Terms of Service applicable when Plaintiff was removed from Facebook contain a

20  provision requiring Meta to keep Plaintiff on the service.  RJN, Levin Decl., Exs. A, B.

21          Broadly speaking, the Amended Complaint's allegations fall into four categories, all of

22  which stem from Meta removing Plaintiff from Facebook.  *First,* Plaintiff claims that Meta

23  wrongfully disabled his "controlling" Facebook account, which allegedly has deprived him of the

24  opportunity to use Facebook, Instagram, Facebook Messenger, CrowdTangle, WhatsApp, and

25  Oculus.  *See* Compl. ¶ 15.  *Second*, Plaintiff claims that the disabling of his account deprived him

26

27  [2] Notably, the Eastern District of Texas already enforced the 2020 Terms of Service in its Report and
Recommendation to transfer the prior action to the Northern District of California.  *See Moates v. Facebook, Inc., et

28  al.*, Case No. 4:21-cv-694-ALM-KPJ, ECF No. 27.

of the benefit of advertising services he purportedly purchased. *See* Compl. ¶ 40. *Third*, Plaintiff claims that he has been deprived of access to his "data" on Facebook. *Fourth*, Plaintiff claims that Meta misappropriated his purported "trade secrets" by removing him from Facebook. Compl. ¶ 44.[3]

### III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The court must accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 664, 678.

### IV.   ARGUMENT

**A.     The Complaint Fails to State Any Cause of Action Against Defendants.**

**1.     The Complaint fails to state any claim against Mr. Zuckerberg.**

Plaintiff purports to bring his Amended Complaint against Mr. Zuckerberg. Plaintiff's claims against Mr. Zuckerberg fail. *First*, courts have dismissed similar complaints against Mr. Zuckerberg where, as here, the pleading is devoid of a single specific allegation against Mr. Zuckerberg. *See, e.g., Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *7 (N.D. Cal. Oct. 3, 2022) (dismissing claims against Mr. Zuckerberg for failing to plead any facts about personal involvement); *Brock v. Zuckerberg*, 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) (same). *Second*, even if Plaintiff had directed specific factual allegations toward Mr. Zuckerberg—which

---

[3] Plaintiff styles his purported causes of action as follows: (1) Breach of Contract, (2) Promissory Estoppel, (3) Fraud – Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Electronic Fund Transfer Act, Regulation E, (4) Liability – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Uniform Trade Secrets Act, (5) Violation of Civil Rights – Violation of the Americans with Disabilities Act, (6) Data Theft – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act 1.

1   he did not—Plaintiff failed to sufficiently allege that Mr. Zuckerberg should be liable under an

2   alter ego theory, which would be necessary to hold a CEO liable for its company's conduct.

3   *MacRae v. HCR Manor Care Services*, 2014 WL 12588464 *7-8 (C.D. Cal. Oct. 30, 2014)

4   (granting motion to dismiss officer-defendants where allegations in complaint insufficient to

5   pierce corporate veil); *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 926-27

6   (dismissing claims against Zuckerberg because the complaint did not allege that he was

7   personally involved in the challenged acts).  Plaintiff has not alleged anything of the sort.[4]

8           **2.**      **First Cause of Action – Breach of Contract.**

9        To plead a claim for breach of contract under California law, a plaintiff must allege: "(1)

10   existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

11   defendant's breach; and (4) damages to plaintiff as a result of the breach." *Appling v. Wachovia*

12   *Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010).

13        At the outset, Plaintiff relies exclusively on the version of the Facebook Terms of Service

14   applicable when he created his account.  But the Terms of Service applicable when Meta disabled

15   Plaintiff's account in October 2020—as Plaintiff alleges—also apply here.  *See* RJN, Levin Decl.,

16   Exs. A, B (requiring users to acknowledge that by continuing to use Facebook, they assent to

17   modifications in the Terms);[5] *see Lloyd*, 2022 WL 4913347, at *1 n.1 (noting that users impliedly

18   agree to the Terms of Service by using the Facebook platform).  In any event, the Terms do not

19   materially differ as to the pertinent obligations—*neither* version of the Terms of Service requires

20   Meta to keep Plaintiff on Facebook, and they both allow Meta to *remove* Plaintiff from Facebook.

21        Thus, to the extent Plaintiff bases his breach of contract claim on Meta "disabling [his

22   Facebook] accounts" (*see* Compl. ¶¶ 31-34), Plaintiff's claim fails—neither version of the

23   Facebook Terms of Service obligates Meta to continue providing Plaintiff with access to

24   Facebook.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (finding

25

26   [4] To the extent Mr. Zuckerberg was included simply because he is CEO of Meta, the bases for dismissal discussed in the forthcoming sections, including Section 230 protection, apply to any claims against him. *See, e.g.*, *Igbonwa v.*

27   *Facebook, Inc.*, 2018 WL 4907632, at *6 (N.D. Cal. Oct. 9, 2018) (dismissing claims against Meta and Mr. Zuckerberg as barred by Section 230).

28   [5] As of October 20, 2020, the October 1, 2020 Terms of Service were in effect. *See* Levin Decl., Ex. A.

no provision prohibited Facebook from terminating an account in manner alleged); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (affirming dismissal of breach of contract claim where Facebook's Terms of Service did not obligate Facebook to continue providing access to Facebook). Courts that have rejected similar contract claims have "correctly recognized [that], while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations'" on Meta to keep content on its platform. *Caraccioli*, 167 F. Supp. 3d at 1064; *Young*, 2010 WL 4269304, at *3 (same); *King*, 2019 WL 6493968, at *2 ("[T]here is nothing in the Terms of Use or other contract identified by King that could plausibly support a breach claim."); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (finding breach of contract claim failed where Twitter's terms of service expressly stated they reserved the right to "suspend or terminate [users'] accounts").

      Plaintiff additionally alleges that Meta violated "its contract with Plaintiff" by disabling his accounts "without cause and without reason consistent with their 2013 community standards." Compl. ¶ 32. But Plaintiff does not identify any provision of either version of the Terms of Service that prevents Meta from enforcing its Community Standards as it sees fit. Indeed, the Facebook Terms of Service applicable in October 2020 vest Meta with the discretion to do exactly that: "If we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account." RJN, Levin Decl., Ex. A, Section 4.2; *see also* RJN, Levin Decl., Ex. B ("if you violate the letter or spirit of this Statement, or otherwise create risk or possible legal exposure for us, *we can* stop providing all or part of Facebook to you.") (emphasis added);[6] *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 203 (2017) (the Terms of Service provide "in essence that Facebook has the discretion to remove content that violates Facebook policies").

---

[6] Plaintiff additionally claims that Defendants violated a *2018* version of the Oculus Terms of Service, which state that Meta "reserve[s] the right to terminate your access and use the Services if you violate these Terms or any other term or policies referenced herein, or if you otherwise create risk or possible legal exposure for us." Compl. ¶ 34. To the extent these Terms of Service apply, they similarly vest Meta with the *discretion* to terminate a user's access to Oculus for various reasons.

1    Accordingly, Plaintiff's breach of contract claim fails.

2    **3.    Second Cause of Action – Promissory Estoppel.**

3    The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in

4    its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both

5    reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his

6    reliance." *US Ecology, Inc. v. State,* 129 Cal. App. 4th 887, 901 (2005) (internal citation and

7    quotation marks omitted).

8    Plaintiff claims that Defendants "made a promise to provide Plaintiff with two gaming

9    systems," but subsequently "made them inoperable" by disabling his Facebook account.  Compl.

10   ¶ 37.  But Plaintiff has not identified a ***clear and unambiguous promise*** made by Defendants to

11   provide Plaintiff with continuous access to Oculus.  This alone is fatal to Plaintiff's promissory

12   estoppel claim.  *See, e.g.*, *Twit, LLC v. Twitter, Inc.*, 2018 WL 2431474, at *4 (N.D. Cal. May 30,

13   2018) (promise must be "definite enough that a court can determine the scope of the duty");

14   *Murphy*, 60 Cal. App. 5th at 39 (dismissing claim where Plaintiff did "not allege[ ] Twitter ever

15   made a specific representation directly to [plaintiff] [] that they would not remove content from

16   platform").  Additionally, Plaintiff has failed to plead any other requisite element of promissory

17   estoppel, including that he relied on any purported promise, or that such reliance was both

18   reasonable and foreseeable.  *See, e.g.*, *Izsack v. Wells Fargo Bank, N.A.*, 2014 WL 262126, at *5

19   (N.D. Cal. Jan. 23, 2014) (dismissing promissory estoppel claim without leave to amend where

20   Plaintiff failed to adequately allege reliance).  Accordingly, Plaintiff's promissory estoppel claim

21   fails and should be dismissed with prejudice.

22   **4.    Third Cause of Action – Fraud.**

23   In his Third Cause of Action, Plaintiff alleges that Meta committed fraud in various

24   respects, including by: (i) "advertising" that Plaintiff himself could advertise and have "the ability

25   to get people to engage with your posts through comments, shares, and likes," but then disabling

26   his accounts (ii) placing ads in front of him "that caused him to follow certain pages that have []

27   lost their investment from the advertisement he clicked on"; (iii) requiring a Facebook account to

28   use Oculus; (iv) continuing to "charge" him without consent.  Compl. ¶¶ 39-43.  Plaintiff appears

- 6 -

1   to assert both common law fraud and violations of the Texas Deceptive Trade Practices Act.

2   Both theories fail.

3        As a preliminary matter, any purported claim under the DTPA fails because both versions

4   of the Facebook Terms of Service contain an enforceable California choice-of-law provision,

5   requiring application of California substantive law.  *See, e.g.*, RJN, Levin Decl., Ex. A ("the laws

6   of the State of California will govern these Terms and any claim, cause of action, or dispute

7   without regard to conflict of law provisions"); *see, e.g.*, *Simulados Software, Ltd. v. Photon

8   Infotech Private, Ltd.*, 40 F. Supp. 3d 1191 (dismissing DTPA claim because the contract's

9   choice-of-law provision required the court to apply California substantive law).

10       Under California law, the "indispensable elements of a fraud claim include a false

11  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

12  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Any claim sounding in

13  fraud is subject to the "heightened pleading standards of Rule 9(b)."  *See Gray v. Preferred Bank*,

14  2010 WL 11508777, at *3 (S.D. Cal. June 10, 2020).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

15  1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when,

16  where, and how' of the misconduct charged.").

17       ***First***, as to his theory that Defendants induced him with *their own* advertising into

18  purchasing advertising on Facebook, Plaintiff fails to plead any specific advertisement(s) or

19  statements he relied upon, when and where those advertisements were made, and how the

20  particular advertisement(s) were false or misleading.  *See, e.g.*, *Ebeid*, 2019 WL 20559662, at *8

21  (dismissing fraud claim where plaintiff failed to adequately allege a misrepresentation).  ***Second***,

22  for his allegation that Defendants defrauded him by "placing ads in front of the Plaintiff that

23  caused him to follow certain pages that have now lost their investment from the advertisement he

24  clicked on" (Compl. ¶ 41), Plaintiff similarly fails to describe the "what," "when," and "how" of

25  his fraud theory.  Additionally, Plaintiff pleads no facts to suggest that *he* incurred any damages

26  in connection with some other unnamed Facebook advertiser's alleged loss of investment.

27  *Shahangian v. Bank of Am. Nat'l Ass'n*, 2015 WL 12696038, at *4 (C.D. Cal. Dec. 1, 2015) ("[A]

28

plaintiff must plead facts suggesting that the damages in question were the direct result of the misrepresentation in question."). **Third**, while Plaintiff claims that Defendants "made multiple misstatements" about Meta's services, including that Plaintiff would not need a Facebook account to use Oculus, Plaintiff again fails to allege any specific statement made by Defendants. *See, e.g.*, *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *7 (N.D. Cal. Oct. 3, 2022) (dismissing fraud claim without leave to amend where plaintiff failed to allege any facts "supporting a reasonable inference that Facebook intended to defraud Plaintiff"). **Finally**, Plaintiff alleges, without more, that Defendants "continued to charge the plaintiff without consent" after his accounts were disabled.  Compl. ¶ 43.  Plaintiff is silent about what these purported charges were for.  But once again, Plaintiff fails to allege a specific false representation related to any purported charges, that Defendants intended to defraud Plaintiff with said representation, or any of the other requisite elements of fraud, including reliance and damages.[7]

### 5.      Fourth Cause of Action – "Liability".

Although captioned as a claim for "liability" arising under various laws, Plaintiff's Fourth Cause of Action appears to be one for trade-secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA").  *See* Compl. ¶¶ 44-45.  Under the CUTSA, a *prima facie* claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1212 (N.D. Cal. 2012).  Plaintiff claims that Defendants misappropriated his trade secrets by deactivating his accounts, thereby depriving him of access to "customer lists and analytical data" stored on those accounts.  Compl. ¶ 44.  These allegations fall far short of pleading a claim for misappropriation for three primary reasons.

*First*, Plaintiff fails to adequately allege facts establishing that Plaintiff's "customer lists

---

[7] Moreover, this allegation appears to rely upon the Restore Online Shoppers' Confidence Act (ROSCA) and/or Regulation E of the Electronic Fund Transfer Act, but Plaintiff fails to explain which provision(s) of those laws Defendants allegedly violated.  *See* Compl. ¶ 43.  The Electronic Fund Transfer Act, Regulation E, has historically applied to financial institutions.  *See, e.g.*, *Contra Warner v. Tinder*, 105. F. Supp. 3d 1083, 1098 (C.D. Cal. 2015).  Moreover, the ROSCA does not contain any private right of action. *See Park v. Webloyalty.com, Inc.*, 2014 4829465, at *7 (S.D. Cal. Sept. 29, 2014) ("ROSCA does not itself provide for private rights of action").

and analytic data" are entitled to trade secret protection.  The "definition of 'trade secret' consists of three elements: (a) information; (b) which is valuable because unknown to others; and (c) which the owner has attempted to keep secret."  *Brocade*, 873 F. Supp. 2d at 1212.  Plaintiff merely contends that this information is "covered under the law," but does not explain how the information is "valuable," or why the information derives value specifically from being kept secret.  Indeed, based on the allegations in the Complaint, Defendants are not able to identify the customer lists and data analytics to which Plaintiff is referring, what business Plaintiff is engaged in, or whether Plaintiff provided those customer lists to Meta.  *See, e.g.*, *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. March 17, 2020) (finding allegations that trade secrets included "detailed customer lists…and other related customer purchasing analytics and trends" were "too high level to give the Court or Defendants notice of the boundaries of the alleged trade secret"); *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *4 (N.D. Cal. April 13, 2015) (dismissing trade secret claim where plaintiff failed to plead existence of trade secret with sufficient specificity).

*Second*, even if Plaintiff's customer lists and analytic data could constitute trade secrets (they cannot), Plaintiff fails to plead facts to plausibly suggest that he attempted to keep them secret. To the contrary, Plaintiff concedes that he stored his alleged trade secrets on Facebook itself.  Compl. ¶ 44.  And while Plaintiff avers that his own Facebook access is protected by two-factor verification (*see id.*), he fails to acknowledge that the 2020 Facebook Terms of Service expressly grants Meta a license to use any uploaded content belonging to Plaintiff "that is covered by intellectual property rights."  RJN, Levin Decl., Ex. A.  Plaintiff cannot plausibly contend that granting this license to Meta and sharing his information with Meta—instead of storing it elsewhere—constituted an attempt to protect his alleged trade secrets.[8]

---

[8] Plaintiff has also failed to allege any damages as a result of the purported misappropriation of trade secrets, as is required to state a CUTSA claim.  *Brocade*, 873 F. Supp. 2d at 1212. Plaintiff does not even identify damages as an element of a CUTSA claim.  *See* Compl. ¶ 44.  Moreover, the 2020 Facebook Terms of Service—to which Plaintiff agreed—expressly provide that "under no circumstance will we be liable to you for any lost profits, revenues, information, or data…"  RJN, Levin Decl., Ex. A, Section 4.3.

- 9 -

### 6.   <u>Fifth Cause of Action - Americans with Disabilities Act.</u>

To prevail under the ADA, a plaintiff must show that: "(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a *place of public accommodation*; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Young*, 790 F. Supp. 2d at 1115. Plaintiff's claim for violation of the ADA fails for two independent reasons.

*First*, Meta's services are not a "place of public accommodation" under California law. The Ninth Circuit has generally limited "places of public accommodation" to physical spaces, except in rare circumstances where websites "have a sufficient 'nexus' to a physical place of public accommodation." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006). The nexus requirement is met *only* where a website's "inaccessibility impedes [the plaintiff's] access to the services of defendant's physical office." *Gomez v. Gates Ests., Inc.*, 2022 WL 458465, at *4 (N.D. Cal. Feb. 15, 2022).  Plaintiff asserts that Meta is a "physical place" subject to the ADA simply because Meta has physical corporate offices.  But Plaintiff's ADA claim relates *entirely* to his use of the Facebook website.  *See* Compl. ¶ 47. Plaintiff does not complain that the alleged "inaccessibility [of Facebook] impedes [his] access to the services of defendant's physical office."  *Id.*  And courts have held—as a matter of law—that Defendants' internet services do not have a sufficient nexus to a physical place of public accommodation.  *See Young*, 790 F. Supp. 2d at 1116 (dismissing ADA claim because "Facebook's internet services [] do not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute").[9]

*Second*, even if Meta were a physical place of public accommodation—which it is not— Plaintiff has not pleaded any facts to show that he was denied any public accommodations by

---

[9] Plaintiff's sole authority on this issue— *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019)—is not to the contrary.  In *Robles*, the Court determined that Domino's website and app have a nexus to places public accommodation under the ADA because those platforms' alleged inaccessibility "impedes access to the goods and services of [Domino's] physical pizza franchises—which are places of public accommodation." *Id.*  In so holding, the court emphasized that customers use the Domino's app in conjunction with purchasing pizza from nearby physical Domino's locations, which are indisputably places of public accommodation.  *See id.*  Plaintiff pleads no facts to suggest a comparable nexus between Meta's online services and the physical spaces (e.g., office space) it operates.

- 10 -

Facebook "because of his disability." *C.B. v. Sonora Sch. Dist*, 691 F. Supp. 2d 1123, 1153 (E.D. Cal. 2009). Although Plaintiff claims to have received targeted ads for certain medications "based on disabilities or behaviors of disabilities that he has" (*see* Compl. ¶ 48), Plaintiff does he plead any facts to substantiate his conclusory allegations that Defendants excluded him from its platform on the basis of his disabilities.

### 7.    <u>Sixth Cause of Action - "Data Theft"</u>

Plaintiff's Sixth Cause of Action accuses Defendants of "data theft" by relying primarily on two sources of law: contract law and the DTPA. *See* Compl. ¶ 49. Neither theory entitles him to any relief.[10] ***First***, Plaintiff claims that Defendants breached a contract with him by withholding data associated with Plaintiff's deactivated accounts (*id.* ¶ 49–50), but he fails to identify any *actual* provision(s) in the applicable contract that Defendants allegedly breached, as is required to state a claim for breach of contract. Rather, Plaintiff references two provisions from the 2013 Terms of Service in passing, but neither is applicable to this breach-of-contract theory. First, he describes the 2013 Terms of Service as providing that "[y]ou can download a copy of your data at any time." Compl. ¶ 49. But in fact, the Terms more specifically state that "[y]ou can download a copy of your data at any time *before deleting your account*." RJN, Levin Decl., Ex. B (emphasis added). This provision applies *only* to a user's ability to access data *before* they delete their own account; it provides no recourse to a user whose account has been disabled by Meta. *See, e.g.*, *Damner v. Facebook, Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) (dismissing breach of contract claim where plaintiff "quote[d] incomplete phrases" from terms regarding safeguarding his information). Second, Plaintiff notes that the 2013 Terms of Service provided that "you own all of the content and information you post on Facebook, and you can control how it is shared." Compl. ¶ 51. But as Plaintiff concedes, the Terms of Service were subsequently modified, and the October 1, 2020 Terms contain no such provision. Moreover, Plaintiff fails to establish how disabling his Facebook account somehow constitutes a

---

[10] Plaintiff also includes reference to the Lanham Act in the heading but makes no specific reference to the Lanham Act in his allegations, nor does he cite any specific provision of the Lanham Act. In any event, the Lanham Act relates to trademark infringement, trademark dilution, and false advertising, none of which are alleged in the Amended Complaint.

- 11 -

breach of the provision stating that Plaintiff owns the content he posts on Facebook.  *See* Compl. ¶ 51.

**Second**, Plaintiff claims that Defendants violated the DTPA by failing to abide by these same alleged contract representations.  But as explained further above (*see* Section V.A.4, *supra*), the DTPA does not apply.  And in any event, "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983); *see also Sunnyside Development Co. v. Opsys Ltd.*, No. C 05-0553, 2005 WL 1876106 *5 (N.D. Cal. Aug. 8, 2005) (finding "mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent").

**Third**, any claim based on Plaintiff's purported missing information should be dismissed because it is barred by the limitation of liability provision in the 2020 Facebook Terms of Service. Waivers of liability that are "clear, unambiguous and explicit bar claims that expressly fall within their scope." *Murphy*, 60 Cal. App. 5th at 25.  Here, Meta disclaims liability for certain damages, including for any "lost…information or data."  RJN, Levin Decl., Ex. A.  Thus, Meta cannot be held liable for purported lost data arising from Meta disabling Plaintiff's Facebook account.  *See, e.g., Caraccioli*, 167 F. Supp. 3d at 1063 (enforcing Facebook Terms of Service to bar certain claims because the terms disclaimed liability for content shared by other users); *King v. Facebook Inc.*, 2022 WL 1188873, at *6 (N.D. Cal. April 20, 2022) (enforcing Meta's limitation of liability provision and finding it expressly barred plaintiff's claim for special damages).

### B.     Section 230 of the Communications Decency Act Bars Plaintiff's Claims.

All of Plaintiff's claims also fail because they are barred as a matter of law under Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 et seq.  Section 230 "protects certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).  Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal

- 12 -

quotations and citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007).  Section 230 is to be "construed broadly, 'to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Cross*, 14 Cal. App. 5th 190, 206 (2017).  Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1).

### 1.     Meta is an "Interactive Computer Service Provider."

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Courts have uniformly held that Meta meets Section 230's "interactive computer service provider" definition.  *See e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ("it is undisputed that Facebook is an interactive computer service provider"); *Lloyd*, 2022 WL 4913347, at *8 ("Meta and/or Facebook is an interactive computer service provider"); *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *2 (N.D. Cal. April 27, 2022) (same).

### 2.     The content at issue was provided by another information content provider.

The information for which Plaintiff seeks to hold Defendants liable must have been provided by an "information content provider" other than Defendants.  47 U.S.C. § 230(c)(1). This inquiry is simple if, as here, the "complaint admits that [the plaintiff] is the source of the information that [Meta] removed" while "nowhere alleg[ing] that [Meta] provided, created, or developed any portion" of the advertising content.  *Fed. Agency of News LLC*, 395 F. Supp. 3d at 1305–06. Here, Plaintiff's claims involve allegations that Plaintiff himself—not Defendants—created the content (*i.e.*, his own accounts) at issue.  *See generally* Compl.  Accordingly, Section 230(c)(1)'s second requirement is met.  *See, e.g., Ebeid*, 2019 WL 2059662, at *7 (finding requirement met where plaintiff was source of content); *Fed Agency of News LLC*, 395 F. Supp. 3d at 1305 (same); *Murphy*, 60 Cal. App. 5th at 26 (same).

- 13 -

### 3.     Each of Plaintiff's claims seeks to treat Meta as a "publisher" or "speaker" of the third-party content.

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to hold a service provider liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone or alter content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–1102 (9th Cir. 2009). What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes liability." *Id.*; *see also Caraccioli*, 167 F. Supp. 3d at 1065 (dismissing breach of contract claim under Section 230); *Igbonwa*, 2018 WL 4907632 at *7 (dismissing defamation and negligence claims under Section 230).

Here, at bottom, each of Plaintiff's claims stem from Defendants removing Plaintiff from Facebook.  The Ninth Circuit has held that such "activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (*en banc*); *Sikhs for* Justice, 697 Fed. Appx. at 526 (Section 230 applies because "SFJ seeks to hold Facebook liable as a publisher for hosting, and later blocking, SFJ's online content.").   Indeed, Plaintiff's breach of contract, promissory estoppel, and "data theft" claims are premised on his assertion that Defendants improperly disabled Plaintiff's Facebook account, depriving him of access to his content, data, and other services.  Compl. ¶¶ 30-38. Plaintiff's fraud claim is premised on assertions that Defendants removed Plaintiff from Facebook, depriving him of access to certain features and benefits.  *See, e.g.*, Compl. ¶¶ 40.  And Plaintiff's trade secret claim seeks to hold Defendants liable for disabling Plaintiff's access to Facebook, which purportedly "misappropriated" his trade secrets.  Compl. ¶ 44.  Finally, Plaintiff's ADA claim seeks to hold Defendants liable for choosing to "exclude and segregate him" from Facebook.  Compl. ¶ 47.

Courts consistently bar similar claims related to Meta's decision to disable user accounts and block access to Facebook content.  *See, e.g.*, *Zimmerman v. Facebook, Inc.*, 2020 WL

- 14 -

1   58778363 (N.D. Cal. Oct. 2, 2020) (dismissing claims relating to defendants' decision to block

2   access to plaintiff's account under Section 230); *Fed. Agency of News LLC*, 432 F. Supp. 3d at

3   1119 (holding that Section 230 barred claims where they were based on "Facebook's decision not

4   to publish [Plaintiffs'] content" by terminating plaintiffs' accounts); *Ebeid*, 2019 WL 2059662, at

5   *3 (dismissing claims related to Facebook's decision to remove plaintiff's Facebook posts).

6        Thus, because each of Plaintiff's claims attempts to treat Meta as the publisher or speaker

7   of the content at issue, Section 230(c)(1)'s final requirement is met.

8        **C.      Plaintiff Should Not Be Granted Leave To Amend.**

9        Since the onset of this litigation, Plaintiff has amended his complaint multiple times with

10  knowledge of the deficiencies Defendants already identified—and Plaintiff has wholly failed to

11  cure them.  Leave to amend is inappropriate if "the pleading could not possibly be cured by the

12  allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).  Here,

13  leave to amend would be inappropriate for two reasons.

14       *First*, as established above (*see* Section IV.A, *supra*), Plaintiff has failed to allege

15  sufficient facts to state any claim in his Amended Complaint and proposes no additional facts that

16  could be pled in yet another amended complaint to assist his claims.  *Second*, Plaintiff's claims

17  will be barred by Section 230(c)(1) no matter what additional facts he pleads (*see* Section IV.B,

18  *supra*)—which is why courts generally deny leave to amend when there is CDA immunity, which

19  cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-

20  66 (9th Cir. 2016).  It is thus apparent that "any proposed amendment would be futile" and that

21  the Court should dismiss with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.

22  1990).

23  **V.      CONCLUSION**

24       Plaintiff has failed to allege facts sufficient to state any claim upon which relief can be

25  granted, and all of Plaintiff's claims are barred by Section 230 of the Communications Decency

26  Act.  For the foregoing reasons, Meta respectfully requests that this Court dismiss the Amended

27  Complaint in its entirety, with prejudice.

28

- 15 -

1

Dated: January 23, 2023

JACOB M. HEATH
ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3

4

By:    */s/ Jacob M. Heath*

5

JACOB M. HEATH
Attorney for Defendant
Meta Platforms, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -