# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doctor Michael Moates | Case No.: 22-cv-04478-JD |
| Licensed Psychologist | |
| Plaintiffs | |
| v. | **JURY TRIAL DEMANDED** |
| META PLATFORMS, INC. | |
| DBA: Facebook, Instagram, Meta Quest | |
| (Oculus) aka Facebook Technologies Inc. aka | |
| Reality Labs, Crowdtangle | |
| Defendants | |

# PLAINTIFF MICHAEL MOATES'

# SECOND AMENDED COMPLAINT

## NATURE OF CASE

1. This case is a complaint against Meta Platforms Inc., formerly Facebook Inc., and its subsidiaries (Facebook, Instagram, Meta Quest (Oculus), Facebook Messenger, Whatsapp) for alleged wrongful actions. Finally, this complaint challenges the Constitutionality of 47 U.S. Code § 230 - Protection for private blocking and screening of offensive material.

## FACTS OF THE CASE

2. To be crystal clear per the Defendants request, this complaint is organized into five sections to explain the various causes of action.

### Meta Platforms Inc. History

3. In 2004, TheFacebook was formed.

4. In 2005, TheFacebook changed its name to Facebook Inc.

5. On April 9th, 2011, Facebook Inc. created Messenger.

6. On April 9th, 2012, Facebook Inc. purchased Instagram.

7. On November 15th, 2013, Facebook Inc. (the drafting party) published a copy of its Statement of Rights and Responsibilities.

8. On July 13th, 2014, Plaintiff Moates created a Facebook account and became a party to the Statements of Rights and Responsibilities (TOS), with Meta becoming the other party. This was a formal contract between Plaintiff Moates and Defendant Meta, previously known as Facebook.

9. Plaintiff Moates preformed his requirements under the contract. He followed the contract and did not go outside of the contract.

10. Meta breached and caused Moates damages to include losing his job/income, his memories, create criminal liablity for him, cost him money in advertsising, and more.

11. On February 19th, 2014, Facebook Inc. purchased Whatsapp.

12. On March 25th, 2014, Facebook Inc. purchased Oculus

13. On November 11th, 2016, Facebook Inc. purchased Crowdtangle.

14. In 2021, Facebook Inc. changed its name to Meta Platforms Inc.

**"Facebook" Website Social Media Platform / Messenger**

15. On November 15th, 2013, Facebook Inc. (the drafting party) published a copy of its Statement of Rights and Responsibilities.

16. On July 13th, 2014, Plaintiff Moates created a Facebook account and became a party to the Statements of Rights and Responsibilities (TOS), with Meta becoming the other party.

17. From September 2nd, 2020, through October 20th, 2020, Plaintiff Moates spent thousands of dollars on Facebook advertising in states nationwide.

   a. All of these ads ran under a Facebooks page like campaign. The goal of this campaign was to get "likes' and "followers" to a page, thereby increasing its reach on the platform. According to Facebook, "Page likes ads help you reach people who may like your Page[1]." "A Page likes ad can help them reach new followers that want to stay up to date on their posts."

   b. Examples of the ads that ran can be seen in **Exhibit A.** Full list can be found here: https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country= US&q=%22Michael%20Moates%22&sort_data[direction]=desc&sort_data[mode

---

[1] https://www.facebook.com/business/help/209213872548401?id=2223788217707136

]=relevancy_monthly_grouped&search_type=keyword_exact_phrase&media_typ
e=all

18. In 2020, numerous times, Facebook and its third-party new partners attempted to target
Plaintiff to bring down his reach and failed.

19. At some point, Plaintiff Moates created a page entitled "QAnon." The page was mostly
inactive and an attempt to gain more followers. Most contents on the page was not
directly posted on the page but rather shared to it.

20. On August 15th, 2022, Facebook created a policy targeting the subject of QAnon. See
**Exhibit B**.

21. On October 20th, 2023, Facebook suspended Moates account.

22. By Facebook's admission, the policy they used to suspend Plaintiff Moates' account.
(Facebook holds evidence regarding this, motion for discovery included.)

23. At this point, Facebook Inc. has violated the TOS they entered into with Plaintiff Moates
in 2014, which states, "Unless we make a change for legal or administrative reasons, or to
correct an inaccurate statement, we will provide you with seven (7) days notice (for
example, by posting the change on the Facebook Site Governance Page) and an
opportunity to comment on changes to this Statement. You can also visit our Facebook
Site Governance Page and "like" the Page to get updates about changes to this
Statement."

   a.  The page referenced here: https://www.facebook.com/fbsitegovernance/

   b.  You will notice there have been no updates since 2018. Thus, Facebook is in
       breach of contract.

       i.  Element 1: A valid contract exists between Moates and Facebook

     ii.    Element 2: Moates performed while using the platform.

     iii.    Element 3: Defendant breached by not providing 7 days' notice and allowing comment as required by the contract. They did not do this.

     iv.    Element 4: Moates was damaged by losing his monetary investment, job, hurt litigiously, and was emotionally distressed by Facebook.

     v.    Restricted his access to information required by a grand jury subpoena. See Exhibit C.

     vi.    "Burning his house down," in which Facebook restricted his access to all of his photos, videos, posts, and more which documented the only copy of certain aspects of his life.

     vii.    Facebook also severed the ability of Plaintiff to login to several 3rd Party websites such as Spotify.

24. Facebook now refuses to provide Plaintiff with his data despite admitting that he is entitled to it.

**<u>Instagram</u>**

25. On October 20th, 2020, Facebook disabled the plaintiff's Instagram account without cause.

26. Plaintiff did not violate any rules or policies on his Instagram account.

27. There was no basis for disabling this account.

28. They again breached his Instagram contract:

    a.   Element 1: A valid contract exists between Moates and Instagram

    b.   Element 2: Moates performed while using the platform.

c.  Element 3: Defendant breached by not "provide reasonable advance notice before the Updated Terms become effective. You agree that we may notify you of the Updated Terms by posting them on the Service" The did not do this.

d.  Element 4: Moates was damaged by losing his monetary investment, job, hurt litigiously, and was emotionally distressed by Facebook.

e.  Restricted his access to information required by a grand jury subpoena. See Exhibit C.

f.  "Burning his house down," in which Facebook restricted his access to all of his photos, videos, posts, and more which documented the only copy of certain aspects of his life.

**Quest**

29. On 18 August 2020, weeks before disabling the Plaintiff's accounts, Facebook announced that you would be required to use Facebook to be able to use any Oculus device[2]. This was despite previous promises that this would not be the case[3]. Plaintiff Moates relied on this promise, still Meta lied and subsequently required the use of Facebook to use the device.

30. On October 20th, 2020, Facebook disabled the plaintiff's Facebook account, thereby making the two Oculus devices Plaintiff owned inoperable. Moates owned an Oculus Go and Oculus Quest 2.

31. They again breached his Oculus contract:

a.  Element 1: A valid contract exists between Moates and Oculus

b.  Element 2: Moates performed while using the platform.

---

[2]https://www.meta.com/blog/quest/a-single-way-to-log-into-oculus-and-unlock-social-features
[3] https://www.roadtovr.com/oculus-guarantee-promise-facebook-log-in/

c.  Element 3: Defendant breached by "If Oculus makes changes to these Terms, we will provide notice of such changes as appropriate, such as by sending an email notification to the address you've provided and/or notice through the Services. If we make an administrative change, we may provide notice by updating the "Last Updated" date at the top of these Terms." They did not do this.

d.  Element 4: Moates was damaged by losing the ability to use his purchased products.

32. They also violated the Texas Deceptive Trade Practices Act (DTPA) or, in the alternative, the California Consumers Legal Remedies Act:

a.  Prior to the sell of the devices, Meta advertised the following:

   i.   "Discover new adventures, master epic challenges or revisit classic moments in your favorite all-in-one games, shows and experiences."

   ii.  "Meta Quest 2 is the all-in-one system that truly sets you free to roam in VR with no wires or cables to limit your experience. A super-fast processor and high-resolution display help to keep your experience smooth and seamless, even as high speed action unfolds around you. 3D positional audio, hand tracking and haptic feedback make virtual worlds feel real. A built-in battery lets you explore further for longer as you discover a growing library of over 350 titles across gaming, social/multiplayer, fitness and entertainment. Incredible social spaces and multiplayer arenas let you meet, play and build communities with people from all over the world. Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in

innovative workspaces. Sit front row with friends and family at movies and live events, find your new workout crew or join quests with fellow adventurers."

    iii.   "Enter new realities Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces."

b.   These ads were rendered false when after profiting from Plaintiff, they rendered his devices useless to wit he could not play games, watch movies, download apps, etc. They disabled his ability to use the product he purchased.

c.   This injured Moates by not allowing him the access to use the device he purchased. Moates relied on comments made by Meta and they let him down by not following through.

d.   Texas Elements:

    i.   Section 17.46(b)(1) prohibits false, misleading, or deceptive acts or practices in the conduct of trade or commerce. When Meta falsely represented that the product was in good working order and then sold a product that was intentionally rendered inoperable, it was a violation of this provision.

    ii.   Section 17.46(b)(24) prohibits representing that goods or services have certain characteristics, benefits, or quantities if they do not. When Meta represented that the product would work in a certain way, and it did not work as promised due to intentional actions by Meta, this was a violation of this provision.

iii.   Section 17.46(b)(5) prohibits representing that goods or services are of a particular standard, quality, or grade if they are of a lesser standard, quality, or grade. When Meta represented that the product was of a certain quality or standard and then intentionally rendered it inoperable, this was a violation of this provision.

iv.   Section 17.46(b)(8) prohibits failing to disclose information concerning goods or services that were known at the time of the transaction if such failure to disclose was intended to induce the consumer into a transaction. Meta's failure to let customers know that they would force them to use a Facebook account to use said products was intentional and willful to get sales.

e.   California Elements:

i.   The (CLRA) prohibits unfair or deceptive acts or practices in the sale or lease of goods or services to consumers.

ii.   The California Unfair Competition Law (UCL) prohibits any unlawful, unfair, or fraudulent business act or practice.

iii.   The California False Advertising Law (FAL) prohibits any false or misleading advertising. When Meta falsely represented the product as being in good working order and then intentionally rendered it inoperable, it was a violation of the FAL.

iv.   The California Song-Beverly Consumer Warranty Act provides protection for consumers who purchase goods that fail to meet the applicable express warranty. When Meta intentionally rendered the product inoperable, this

was a breach of the express warranty and a violation of the Song-Beverly Act.

v.   The California Business and Professions Code section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business act or practice. When Meta intentionally sold a product and then rendered it inoperable, this was a violation of this provision.

## Crowdtangle

33. On October 20th, 2020, Facebook disabled the plaintiff's Crowdtangle account.

34. They again breached his Oculus contract as there was no basis for disabling his account.

## CAUSES OF ACTION

## BREACH OF CONTRACT

35. Plaintiff Moates entered into a valid contract with Meta Platforms Inc. when he created a Facebook account on July 13th, 2014, an Instagram account at an unknown date, and purchased Oculus devices. The contract included Meta's Statement of Rights and Responsibilities (TOS), which required Meta to provide seven days' notice and an opportunity to comment on changes to the TOS, unless there was a change for legal or administrative reasons or to correct an inaccurate statement.

36. Plaintiff Moates performed under the contract by using the platforms and devices in accordance with the TOS. However, Meta Platforms Inc. breached the contract by suspending Plaintiff Moates' Facebook, Instagram, and Oculus accounts without providing the required notice and opportunity to comment on changes to the TOS.

37. Meta Platforms Inc.'s breach of contract has caused Plaintiff Moates to suffer damages, including losing his monetary investment, job, and access to his data required by a grand jury subpoena. Meta's actions have also caused Plaintiff Moates emotional distress and the severance of his ability to login to several 3rd Party websites such as Spotify.

38. Facebook violated the terms of its contracts with Moates in several ways. Firstly, Facebook failed to provide Moates with seven days' notice and an opportunity to comment on changes to its Statement of Rights and Responsibilities, as required by their agreement. Moates relied on this provision in entering into the agreement, and Facebook's failure to follow it breached the contract.

39. Secondly, Facebook disabled Moates' accounts on its platforms without cause or justification, in violation of the terms of their contracts. Moates did not violate any of Facebook's rules or policies on his accounts, and Facebook's actions were therefore arbitrary and capricious.

40. Thirdly, Facebook restricted Moates' access to information required by a grand jury subpoena, and denied him access to his data despite admitting that he was entitled to it. This constituted a breach of the contracts, which required Facebook to provide Moates with access to his information.

41. Finally, Facebook's actions in rendering Moates' Oculus devices inoperable also violated the terms of their contract. Facebook had previously advertised that the devices were all-in-one systems that would allow users to "discover new adventures" and "travel universes in blockbuster fantasies," among other things. However, after Moates had purchased the devices, Facebook required him to use Facebook to be able to use them, in direct contradiction to their earlier promises. Facebook's actions were therefore a breach

of contract, as they rendered the devices inoperable and deprived Moates of the benefits
he had been promised when he purchased them.

## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

42. Prior to the sale of the Oculus devices, Meta Platforms Inc. advertised the following
claims:

    a.  "Discover new adventures, master epic challenges or revisit classic moments in
your favorite all-in-one games, shows and experiences."

    b.  "Meta Quest 2 is the all-in-one system that truly sets you free to roam in VR with
no wires or cables to limit your experience. A super-fast processor and
high-resolution display help to keep your experience smooth and seamless, even
as high speed action unfolds around you. 3D positional audio, hand tracking and
haptic feedback make virtual worlds feel real. A built-in battery lets you explore
further for longer as you discover a growing library of over 350 titles across
gaming, social/multiplayer, fitness and entertainment. Incredible social spaces and
multiplayer arenas let you meet, play and build communities with people from all
over the world. Travel universes in blockbuster fantasies, scare yourself witless in
horror adventures or collaborate with colleagues in innovative workspaces. Sit
front row with friends and family at movies and live events, find your new
workout crew or join quests with fellow adventurers."

    c.  "Enter new realities Travel universes in blockbuster fantasies, scare yourself
witless in horror adventures or collaborate with colleagues in innovative
workspaces."

43. These claims were rendered false when, after profiting from Plaintiff Moates, Meta Platforms Inc. rendered his devices useless, such that he could not play games, watch movies, download apps, etc.

44. By falsely representing that the products were in good working order, and then rendering them intentionally inoperable, Meta Platforms Inc. violated the Texas Deceptive Trade Practices Act (DTPA).

45. Specifically, Meta Platforms Inc. violated the following provisions of the DTPA:

    a. Section 17.46(b)(1) prohibits false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

    b. Section 17.46(b)(5) prohibits representing that goods or services are of a particular standard, quality, or grade if they are of a lesser standard, quality, or grade.

    c. Section 17.46(b)(8) prohibits failing to disclose information concerning goods or services that were known at the time of the transaction if such failure to disclose was intended to induce the consumer into a transaction.

    d. Section 17.46(b)(24) prohibits representing that goods or services have certain characteristics, benefits, or quantities if they do not.

46. As a result of Meta Platforms Inc.'s actions, Plaintiff Moates has suffered damages, including the loss of the ability to use the purchased products and to rely on the claims made by Meta Platforms Inc.

**ALTERNATIVELY THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

47. Plaintiff Moates purchased the Oculus devices from Meta Platforms Inc. based on their advertising claims, which included the following:

    a. "Discover new adventures, master epic challenges or revisit classic moments in your favorite all-in-one games, shows and experiences."

    b. "Meta Quest 2 is the all-in-one system that truly sets you free to roam in VR with no wires or cables to limit your experience. A super-fast processor and high-resolution display help to keep your experience smooth and seamless, even as high speed action unfolds around you. 3D positional audio, hand tracking and haptic feedback make virtual worlds feel real. A built-in battery lets you explore further for longer as you discover a growing library of over 350 titles across gaming, social/multiplayer, fitness and entertainment. Incredible social spaces and multiplayer arenas let you meet, play and build communities with people from all over the world. Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces. Sit front row with friends and family at movies and live events, find your new workout crew or join quests with fellow adventurers."

    c. "Enter new realities Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces."

48. Based on these claims, Plaintiff Moates reasonably believed that the products were of good quality and fit for their intended purpose.

49. However, Meta Platforms Inc. intentionally rendered the purchased products inoperable, such that Plaintiff Moates was unable to use them for their intended purpose.

50. By doing so, Meta Platforms Inc. violated the California Consumer Legal Remedies Act (CLRA), which prohibits unfair or deceptive acts or practices in the sale or lease of goods or services to consumers.

51. Specifically, Meta Platforms Inc. violated the following provisions of the CLRA:

   a. Section 1770(a)(5) prohibits representing that goods or services have certain characteristics, benefits, or quantities if they do not.

   b. Section 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade if they are of a lesser standard, quality, or grade.

   c. Section 1770(a)(9) prohibits representing that goods or services are new or original if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand.

52. As a result of Meta Platforms Inc.'s actions, Plaintiff Moates has suffered damages, including the loss of the ability to use the purchased products and to rely on the claims made by Meta Platforms Inc.

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

53. Plaintiff Moates purchased the Oculus devices from Meta Platforms Inc. based on their advertising claims, which included the following:

   a. "Discover new adventures, master epic challenges or revisit classic moments in your favorite all-in-one games, shows and experiences."

   b. "Meta Quest 2 is the all-in-one system that truly sets you free to roam in VR with no wires or cables to limit your experience. A super-fast processor and high-resolution display help to keep your experience smooth and seamless, even as high speed action unfolds around you. 3D positional audio, hand tracking and

haptic feedback make virtual worlds feel real. A built-in battery lets you explore further for longer as you discover a growing library of over 350 titles across gaming, social/multiplayer, fitness and entertainment. Incredible social spaces and multiplayer arenas let you meet, play and build communities with people from all over the world. Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces. Sit front row with friends and family at movies and live events, find your new workout crew or join quests with fellow adventurers."

    c. "Enter new realities Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces."

54. Based on these claims, Plaintiff Moates reasonably believed that the products were of good quality and fit for their intended purpose.

55. However, Meta Platforms Inc. intentionally rendered the purchased products inoperable, such that Plaintiff Moates was unable to use them for their intended purpose.

56. By doing so, Meta Platforms Inc. engaged in unfair competition in violation of the California Unfair Competition Law (UCL), which prohibits any unlawful, unfair, or fraudulent business act or practice.

57. Specifically, Meta Platforms Inc. violated the UCL by engaging in the following conduct:

    a. Representing that the products were of a certain quality and functionality when they were not;

    b. Failing to disclose information concerning the products that were known at the time of the transaction;

    c.   Intentionally rendering the purchased products inoperable after they were sold to the Plaintiff.

58. As a result of Meta Platforms Inc.'s actions, Plaintiff Moates has suffered damages, including the loss of the ability to use the purchased products and to rely on the claims made by Meta Platforms Inc.

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**

59. Plaintiff Moates purchased the Oculus devices from Meta Platforms Inc. based on their advertising claims, which included the following:

    a.   "Discover new adventures, master epic challenges or revisit classic moments in your favorite all-in-one games, shows and experiences."

    b.   "Meta Quest 2 is the all-in-one system that truly sets you free to roam in VR with no wires or cables to limit your experience. A super-fast processor and high-resolution display help to keep your experience smooth and seamless, even as high speed action unfolds around you. 3D positional audio, hand tracking and haptic feedback make virtual worlds feel real. A built-in battery lets you explore further for longer as you discover a growing library of over 350 titles across gaming, social/multiplayer, fitness and entertainment. Incredible social spaces and multiplayer arenas let you meet, play and build communities with people from all over the world. Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces. Sit front row with friends and family at movies and live events, find your new workout crew or join quests with fellow adventurers."

    c. "Enter new realities Travel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces."

60. These advertising claims were material to Plaintiff Moates' decision to purchase the products.

61. However, Meta Platforms Inc. intentionally rendered the purchased products inoperable, such that Plaintiff Moates was unable to use them for their intended purpose.

62. By doing so, Meta Platforms Inc. engaged in false advertising in violation of the California False Advertising Law, which prohibits any person from making false or misleading statements regarding their products or services.

63. Specifically, Meta Platforms Inc. violated the California False Advertising Law by making the following false or misleading statements:

    a. That the products were capable of providing a quality and immersive virtual reality experience, when in fact they were intentionally rendered inoperable;

    b. That the products were fit for their intended purpose, when in fact they were intentionally rendered inoperable;

    c. That the products were of a certain quality and functionality, when in fact they were intentionally rendered inoperable.

64. As a result of Meta Platforms Inc.'s false advertising, Plaintiff Moates has suffered damages, including the loss of the ability to use the purchased products and to rely on the claims made by Meta Platforms Inc.

65. Therefore, Plaintiff Moates has a cause of action against Meta Platforms Inc. for violation of the California False Advertising Law.

**VIOLATION OF THE CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT**

66. Plaintiff Moates purchased the Oculus devices from Meta Platforms Inc. based on the express warranty provided by Meta Platforms Inc.

67. The express warranty provided that the products were fit for their intended purpose and would perform as advertised.

68. However, Meta Platforms Inc. intentionally rendered the purchased products inoperable, such that Plaintiff Moates was unable to use them for their intended purpose.

69. By doing so, Meta Platforms Inc. breached its express warranty and violated the California Song-Beverly Consumer Warranty Act, which provides protection for consumers who purchase goods that fail to meet the applicable express warranty.

70. Specifically, Meta Platforms Inc. breached the California Song-Beverly Consumer Warranty Act by failing to provide goods that were fit for their intended purpose and failed to perform as advertised.

71. As a result of Meta Platforms Inc.'s breach of warranty, Plaintiff Moates has suffered damages, including the loss of the ability to use the purchased products and to rely on the warranty provided by Meta Platforms Inc.

**PROMISSORY ESTOPPEL**

72. Meta Platforms Inc. made a promise that Plaintiff Moates could use his Oculus devices without having to use a Facebook account.

73. Plaintiff Moates relied on this promise by purchasing the Oculus devices.

74. However, Meta Platforms Inc. subsequently required the use of a Facebook account to use the Oculus devices, thereby breaching its promise.

75. Plaintiff Moates suffered damages as a result of this breach, including the loss of the ability to use the Oculus devices without a Facebook account.

76. The promise made by Meta Platforms Inc. was clear, definite, and made with the intent to induce reliance by Plaintiff Moates.

77. Plaintiff Moates reasonably relied on this promise to his detriment by purchasing the Oculus devices.

78. Meta Platforms Inc.'s subsequent breach of its promise caused harm to Plaintiff Moates.

79. Therefore, Plaintiff Moates has a cause of action against Meta Platforms Inc. for promissory estoppel.

**FRAUD**

80. Meta Platforms Inc. made a false representation to Plaintiff Moates by advertising that the Oculus devices would function without requiring the use of a Facebook account.

81. Plaintiff Moates relied on this false representation by purchasing the Oculus devices.

82. Meta Platforms Inc. made this false representation with the intent to deceive Plaintiff Moates.

83. Plaintiff Moates justifiably relied on this false representation to his detriment by purchasing the Oculus devices.

84. Meta Platforms Inc. knew or should have known that the false representation would induce Plaintiff Moates to purchase the Oculus devices.

85. As a result of Meta Platforms Inc.'s false representation, Plaintiff Moates suffered damages, including the loss of the ability to use the Oculus devices without a Facebook account.

**SECTION 230 OF THE COMMUNICATIONS ACT UNCONSTITUTIONAL**

86. Section 230 of the Communications Act provides a "safe harbor" for online platforms such as Meta Platforms Inc. from liability for the content posted by third-party users on their platforms. This immunity has allowed platforms like Meta Platforms Inc. to act with impunity and ignore harmful content on their platforms, leading to a significant public harm.

87. Section 230 immunity violates the First Amendment by allowing private entities to control speech and censor users without any government oversight or regulation. The government has delegated its authority to regulate speech to private companies that have become de facto gatekeepers of the internet. As a result, users have no recourse to challenge the censorship decisions made by these private entities. This results in an infringement on the First Amendment rights of users who have been silenced or censored by Meta Platforms Inc. without due process of law.

88. Additionally, the immunity provided by Section 230 violates the Fifth Amendment's Due Process Clause by depriving individuals of their property rights without a fair hearing or opportunity to be heard. By allowing Meta Platforms Inc. to control speech and content on their platforms without any government oversight or regulation, Section 230 deprives individuals of their property rights in their online profiles and content without due process of law. Furthermore, users are not given a meaningful opportunity to be heard or challenge censorship decisions made by Meta Platforms Inc.

89. The immunity provided by Section 230 has resulted in a significant public harm by allowing platforms like Meta Platforms Inc. to spread and amplify harmful and illegal content without consequence. This includes the spread of disinformation, hate speech, and other harmful content that has contributed to political polarization, violence, and

harassment. Furthermore, the immunity provided by Section 230 has given Meta

Platforms Inc. unchecked power to control the flow of information and ideas on the

internet, which is contrary to the values of a democratic society.

90. In conclusion, the immunity provided by Section 230 of the Communications Act is

unconstitutional as it violates the First Amendment and Fifth Amendment's Due Process

Clause. By allowing private entities like Meta Platforms Inc. to control speech and

content on their platforms without any government oversight or regulation, Section 230

has resulted in a significant public harm and deprived individuals of their property rights

without due process of law. Therefore, Plaintiff Moates has a cause of action against the

constitutionality of Section 230 of the Communications Act.

91. The immunity provided by Section 230 also violates the Equal Protection Clause of the

Fourteenth Amendment. It allows online platforms to discriminate against certain

individuals or groups based on their race, gender, religion, sexual orientation, and other

protected characteristics without any legal recourse. By granting immunity to these

private entities, Section 230 allows them to act with impunity and ignore the harmful

effects of their actions on marginalized communities.

92. Moreover, the immunity provided by Section 230 is outdated and does not reflect the

current state of the internet. The internet has evolved significantly since the passage of

Section 230 in 1996, and the law has not kept pace with these changes. The law was

designed to promote innovation and free expression on the internet, but it has been

exploited by online platforms like Meta Platforms Inc. to spread and amplify harmful and

illegal content without consequence.

93. The immunity provided by Section 230 undermines the rule of law by allowing online platforms to act as judge, jury, and executioner in deciding what content is allowed on their platforms. It deprives individuals of their right to due process and undermines the role of the courts in adjudicating disputes. This undermines the principles of democratic governance and the rule of law, which require that decisions be made by impartial and independent institutions, not private entities.

94. In addition to the above arguments, Plaintiff Moates may argue that the immunity provided by Section 230 has allowed online platforms to engage in a form of censorship by selectively removing content that they deem to be inappropriate or offensive. This has resulted in a chilling effect on free speech and has created an environment in which certain opinions and perspectives are suppressed, while others are amplified.

95. Furthermore, the immunity provided by Section 230 has allowed online platforms to wield enormous power and influence over public discourse and information dissemination. They are able to control the flow of information and manipulate public opinion without any accountability or oversight. This concentration of power in the hands of a few private entities is a threat to democracy and undermines the principles of free and open debate.

96. Plaintiff Moates may also argue that the immunity provided by Section 230 has had a detrimental impact on competition and innovation in the tech industry. It has allowed large platforms like Meta Platforms Inc. to dominate the market and stifle competition from smaller startups. By shielding these dominant players from liability for harmful or illegal content, Section 230 has created a barrier to entry for new players in the market and has inhibited innovation.

97. Plaintiff Moates asserts the immunity provided by Section 230 has contributed to the erosion of privacy rights online. Online platforms like Meta Platforms Inc. collect vast amounts of personal data from their users, which they use for targeted advertising and other purposes. However, the immunity provided by Section 230 has shielded these platforms from liability for data breaches or other violations of user privacy.

98. The immunity provided by Section 230 of the Communications Act has allowed online platforms like Meta Platforms Inc. to engage in monopolistic behavior without any legal consequences, which has had a negative impact on competition and innovation in the tech industry. This, in turn, has led to the concentration of power in the hands of a few tech giants, which has had a negative impact on democratic values and the rule of law.

99. First, the immunity provided by Section 230 has allowed online platforms to engage in monopolistic behavior, which has had a negative impact on competition and innovation in the tech industry. Online platforms like Meta Platforms Inc. have been accused of using their dominant position in the market to stifle competition and to acquire or drive out smaller rivals. By shielding these platforms from liability for antitrust violations, Section 230 has created a situation in which online platforms are free to engage in anti-competitive behavior without any fear of retribution.

100.    Second, the immunity provided by Section 230 has contributed to the concentration of power in the tech industry, which has had a negative impact on democratic values and the rule of law. By allowing online platforms to dominate the public discourse without any accountability or competition, Section 230 has created a situation in which a small number of tech giants have disproportionate control over the information and opinions that people are exposed to. This has contributed to the erosion of trust in democratic

institutions and has created a situation in which public discourse is increasingly dominated by a few powerful entities.

101.    Third, the concentration of power in the hands of a few tech giants violates the First Amendment protection of free speech. By allowing a small number of tech companies to determine what opinions and viewpoints are allowed to be expressed online, Section 230 has created a situation in which the public discourse is increasingly dominated by a few powerful entities. This has had a chilling effect on free speech and has created a situation in which the public is exposed to a narrow range of viewpoints and opinions.

**IN THE ALTERNATIVE VIOLATION OF SECTION 230**

102.    First, the language of Section 230 clearly states that online platforms are not liable for content posted by third-party users. However, this immunity only applies if the platforms are acting as neutral intermediaries and not actively involved in creating, developing, or modifying the content in question. In this case, Plaintiff Moates alleges that the defendants actively censored his content and disabled his accounts, which goes beyond the scope of immunity provided by Section 230.

103.    Facebook cannot claim to be a neutral intermediary that merely provides a platform for third-party speech without exercising editorial control over the content that appears on its platform. Facebook's business model depends on collecting and using data from its users to personalize their experiences and deliver targeted advertisements. In order to do this effectively, Facebook must analyze and filter the content that appears on its platform.

104.    Moreover, Facebook has repeatedly made editorial decisions that have a significant impact on the content that appears on its platform. For example, Facebook has developed algorithms to determine which posts appear in users' newsfeeds, and it has made policy

decisions to prohibit certain types of content, such as hate speech and misinformation. Facebook also employs thousands of moderators to review content and remove posts that violate its policies.

105.    These actions demonstrate that Facebook is not a neutral intermediary but rather an active participant in shaping the content that appears on its platform. As such, Facebook should not be entitled to the legal protections afforded to neutral intermediaries under Section 230 of the Communications Decency Act. If Facebook is going to exercise editorial control over content, it should be held accountable for the consequences of that control.

106.    In addition to its role in shaping the content on its platform, Facebook also has significant power and influence in the broader digital ecosystem. With over 3 billion monthly active users across its various platforms, Facebook has a near-monopoly on social media and messaging services. This dominance gives Facebook enormous power to shape the public discourse and influence political and social outcomes.

107.    Given this power, it is critical that Facebook is held accountable for the content that appears on its platform. The legal protections of Section 230 were intended to shield neutral intermediaries from liability for the actions of third-party users, not to shield dominant players in the digital ecosystem from accountability for their own actions.

108.    Furthermore, the argument that Facebook is a neutral intermediary becomes even more problematic when considering the role it plays in amplifying certain voices and viewpoints over others. Facebook's algorithms and policies have been shown to disproportionately amplify certain types of content, leading to the spread of misinformation and the amplification of extremist voices.

109.    For these reasons, it is clear that Facebook is not a neutral intermediary and should

not be afforded the legal protections of Section 230. Instead, Facebook should be held

accountable for its role in shaping the public discourse and for the consequences of the

content that appears on its platform.

110.    Section 230 of the Communications Decency Act provides that an interactive

computer service shall not be treated as the publisher or speaker of any information

provided by another information content provider. However, Section 230 also requires

that interactive computer services act in good faith to restrict access to or availability of

material that the service provider or user considers to be obscene, lewd, lascivious, filthy,

excessively violent, harassing, or otherwise objectionable.

111.    Based on the facts provided, there is no indication that Moates engaged in any

conduct that would be considered obscene, lewd, lascivious, filthy, excessively violent,

harassing, or otherwise objectionable. Therefore, Facebook's suspension of his account

and disabling of his access to his devices cannot be justified under Section 230's

protection for private screening and blocking of offensive material.

112.    Moreover, even if Moates had engaged in such conduct, Facebook's actions in this

case suggest that the company did not act in good faith as required by Section 230. The

statute provides immunity to internet platforms that act in good faith to restrict access to

offensive material, but it also requires that such platforms act "in good faith" to restrict

access to such material. If Facebook is found to have acted in bad faith or with malice in

restricting access to Moates' account and devices, it could lose the protections afforded by

Section 230.

113.    In this case, the fact that Facebook disabled Moates' account and access to his devices without providing any clear reason for doing so raises questions about the company's good faith. If Facebook had a legitimate reason for taking such actions, it would have been required to provide Moates with notice and an opportunity to contest the decision, as required by its own terms of service. The failure to provide such notice and an opportunity to be heard suggests that Facebook may have acted in bad faith or with malice in this instance.

114.    In this case, Facebook, as an interactive computer service, is granted immunity from liability for user-generated content. However, Facebook's actions in selectively enforcing its content moderation policies against certain users, such as Moates, suggest that Facebook may not be acting in good faith to restrict access to objectionable content. Instead, Facebook's actions may be motivated by political bias or other considerations.

115.    By selectively enforcing its content moderation policies against Moates, Facebook has failed to act in good faith as required by Section 230. Moates did not violate any of Facebook's policies or terms of service, yet his accounts were suspended and he was denied access to his data. This suggests that Facebook is not acting as a neutral intermediary, but rather as a publisher with an editorial agenda.

116.    Therefore, Facebook's actions in violating its own terms of service and selectively enforcing its content moderation policies against certain users may also constitute a violation of Section 230. By failing to act in good faith to restrict access to objectionable material, Facebook may have forfeited the immunity from liability granted to interactive computer services under Section 230.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Michael Moates respectfully requests that this Court enter an order:

117.    Granting a preliminary and permanent injunction requiring the Defendant to release all data and information it holds concerning Plaintiff and to cease all further restrictions on Plaintiff's access to data and information, including through third-party websites such as Spotify.

118.    An injunction requiring Defendant to reactivate all accounts and enable all devices previously disabled or removed in violation of Plaintiff's constitutional rights and in violation of Defendant's own terms of service.

119.    Awarding damages to Plaintiff for the costs and expenses associated with Plaintiff's purchase and placement of Facebook ads during the period from September 2nd, 2020, through October 20th, 2020, in an amount to be determined at trial.

120.    Awarding damages to Plaintiff for the loss of use of his Oculus Go and Oculus Quest 2 devices due to Defendant's disabling of Plaintiff's Facebook account, in an amount to be determined at trial.

121.    Awarding damages to Plaintiff for emotional distress and harm suffered as a direct result of Defendant's wrongful acts and omissions, in an amount to be determined at trial.

122.    Declaring that Defendant has violated the terms of the contracts it entered into with Plaintiff with respect to his use of Facebook, Instagram, and Oculus.

123.    Declaring that Defendant has violated the Texas Deceptive Trade Practices Act (DTPA), the California Consumers Legal Remedies Act (CLRA), the California Unfair Competition Law (UCL), the California False Advertising Law (FAL), the California

Song-Beverly Consumer Warranty Act, and the California Business and Professions Code section 17200 et seq.

124.    Declaring that 47 U.S. Code § 230 - Protection for private blocking and screening of offensive material is unconstitutional on its face and as applied to the present case.

125.    Awarding Plaintiff such further and additional relief as the Court may deem just and proper.

/S/ DR. MICAHEL S MOATES

Pro Se

4501 Nautilus Circle #710

Fort Worth, Texas 76106

254-966-2837

mike@cpmht.com