JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 March Road
Menlo Park, CA 94025
Telephone: (650) 614-7470
Facsimile: (650) 614-7401

MELISSA LEVIN (SBN 328146)
melissalevin@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOATES,<br><br>             Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC. et al.,<br><br>             Defendants. | Case No. 3:22-cv-04478-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, MEMORANDUM POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: June 1, 2023<br>Time:            10:00 am<br>Dept:            19<br>Judge:          Hon. James Donato |

1

## NOTICE OF MOTION AND RELIEF SOUGHT

2   PLEASE TAKE NOTICE that on June 1, 2023, at 10:00 a.m., or as soon thereafter as may

3   be heard by the Honorable Judge James Donato, United States District Court, San Francisco

4   Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc.

5   will and hereby does move to dismiss Plaintiff's Second Amended Complaint on the grounds that

6   Plaintiff fails to state a claim upon which relief can be granted and some of Plaintiff's claims are

7   barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

8   This motion is based upon this notice of motion and motion, the memorandum of points

9   and authorities in support that follows, the proposed order filed concurrently herewith, Meta's

10  Request for Judicial Notice and Levin Declaration in support, all pleadings, and papers on file in

11  this action, the arguments of counsel, and upon such further oral and written argument and

12  evidence as may be presented at or prior to the hearing on this motion.

13

14  Dated: April 6, 2023

JACOB M. HEATH
ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16

17  By:   /s/ Jacob M. Heath
JACOB M. HEATH
Attorney for Defendant
Meta Platforms, Inc.

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.............................................................................................................. 1

II.   BACKGROUND............................................................................................................... 1

III.  LEGAL STANDARD ...................................................................................................... 2

IV.  ARGUMENT ................................................................................................................... 3

    A.  The Complaint Fails to State Any Cause of Action Against Meta. ............................... 3

        1.  First Cause of Action – Breach of Contract. ....................................................... 3

        2.  Second, Third, and Fourth Causes of Action – Violations of California Consumer Protection Statutes. ............................................................................. 6

           a.  Plaintiff's CLRA claim fails. ........................................................................ 6

           b.  Plaintiff's UCL claim fails. ........................................................................... 8

           c.  Plaintiff's FAL claim fails. ........................................................................... 9

        3.  Fifth Cause of Action – Violation of the California Song-Beverly Consumer Warranty Act. ..................................................................................................... 9

        4.  Sixth Cause of Action – Promissory Estoppel. ................................................. 10

        5.  Seventh Cause of Action – Fraud....................................................................... 11

    B.  Section 230 of the Communications Decency Act Bars Plaintiff's Claims................. 12

        1.  Meta is an interactive computer service provider. ............................................ 13

        2.  The content at issue was provided by another information content provider. . 13

        3.  Each of Plaintiff's claims seeks to treat Meta as a "publisher" or "speaker" of the third-party content........................................................................................ 14

    C.  Plaintiff Should Not Be Granted Leave To Amend. .................................................... 15

V.   CONCLUSION .............................................................................................................. 16

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 8

*Anunziato v. eMachines, Inc.*,
402 F.Supp.2d 1133 (C.D. Cal.2005)..................................................................... 7

*Appling v. Wachovia Mortg., FSB*,
745 F. Supp. 2d 961 (N.D. Cal. 2010) ................................................................. 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 2, 3

*Baltazar v. Apple, Inc.*,
2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ..................................................... 7

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009).......................................................................... 12, 14

*Birdsong v. Apple*,
590 F.3d 955 (9th Cir. 2009)............................................................................. 10

*Bower v. AT&T Mobility*,
LLC, 196 Cal.App.4th 1545 (2011) ..................................................................... 6

*Calise v. Meta Platforms, Inc.*,
2022 WL 1240860 (N.D. Cal. April 27, 2022) .................................................... 14

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
2017) .............................................................................................................. 4, 14

*Carter v. Rasier-CA, LLC*,
2017 WL 4098858 (N.D. Cal. Sept. 15, 2017) ..................................................... 12

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017)............................................................................. 4, 13

*Cummins, Inc. v. Superior Court*,
36 Cal.4th 478 (2005) ...................................................................................... 10

*Damner v. Facebook, Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ..................................................... 4

ii

*Divino Group LLC v. Google LLC*,
  2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ......................................................... 15

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................ 12, 13, 15

*Elias v. Hewlett–Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................................... 9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ................................................................................. 14

*Fed. Agency of News LLC v. Facebook, Inc.*,
  395 F. Supp. 3d 1295 (N.D. Cal. 2019) .................................................................. 13

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................... 8, 9

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ...................................................................................... 15

*Frenzel v. AliphCom*,
  76 F.Supp. 3d 999 (N.D. Cal. 2014) ......................................................................... 7

*Garcia v. Sony Computer Entm't Am, LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..................................................................... 8

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. July 30, 2009) ...................................................... 5

*Gonzalez v. Drew Industries Inc.*,
  750 F. Supp. 2d 1061 (C.D. Cal. 2007) ............................................................... 9, 10

*Gray v. Preferred Bank*,
  2010 WL 11508777 (S.D. Cal. June 10, 2020) ........................................................ 11

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 ............................................................................................. 8, 9

*Herron v. Best Buy Co. Inc.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) ..................................................................... 6

*Herskowitz v. Apple, Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................................................... 12

*Huber v. Biden*,
  2022 WL 827248 (N.D. Cal. March 18, 2022) ....................................................... 15

- iii -

*Izsack v. Wells Fargo Bank, N.A.*,
  2014 WL 262126 (N.D. Cal. Jan. 23, 2014) ..................................................................... 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)........................................................................................... 7

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016)......................................................................................... 15

*King v. Facebook Inc.*,
  2022 WL 1188873 (N.D. Cal. April 20, 2022) ........................................................... 4, 5

*King v. Facebook, Inc.*,
  572 F. Supp. 3d 776 (N.D. Cal. Nov. 12, 2021) ............................................................ 12

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)............................................................................................. 3

*Lloyd v. Facebook, Inc.*,
  2022 WL 4913347 (N.D. Cal. 2022)...................................................................... 3, 11, 13

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000)......................................................................................... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)........................................................................................... 3

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021)................................................................................... 5, 11, 14

*Myers v. Starbucks Corp.*,
  536 F.Supp.3d 657 (C.D. Cal. May 5, 2021) .................................................................... 6

*People v. Johnson & Johnson*,
  77 Cal. App. 5th 295 (2022)............................................................................................. 9

*Perfect 10, Inc. v. CCBill LLC*,
  481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of*
  *reh'g*, 488 F.3d 1102 (9th Cir. 2007) .............................................................................. 13

*Prager University v. Google LLC*,
  951 F.3d 991 (9th Cir. 2020)............................................................................................ 7

*Price v. Apple*,
  2022 WL 1032472 (N.D. Cal. April 6, 2022) ................................................................... 8

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)........................................................................................... 15

- iv -

*Rigsby v. GoDaddy Inc.*,
    2023 WL 1489914 (9th Cir. Feb. 3, 2023) ................................................................... 14

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ................................. 13, 14

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014) ........................................................................ 6

*Twit, LLC v. Twitter, Inc.*,
    2018 WL 2431474 (N.D. Cal. May 30, 2018) ............................................................. 11

*US Ecology, Inc. v. State*,
    129 Cal. App. 4th 887 (2005) ................................................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 11

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................. 4, 5

*Zimmerman v. Facebook, Inc.*,
    2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) ........................................................... 14

**Statutes**

47 U.S.C. § 230 ........................................................................................................ *passim*

Bus. & Prof. Code § 17200 ............................................................................................ 7

Cal. Civ.Code § 1791.2(a) .......................................................................................... 10

California Consumer Legal Remedies Act ........................................................... 1, 6, 7, 9

California False Advertising Law ........................................................................ 1, 6, 7, 9

California Song-Beverly Consumer Warranty Act ................................................ 1, 9, 10

California Unfair Competition Law ..................................................................... 1, 6, 7, 9

Communications Decency Act ............................................................................... 1, 12

Texas Deceptive Trade Practices Act ...................................................................... 1, 6

Rule 9(b) ................................................................................................... 6, 7, 11, 12

Rule 12(b)(6) ....................................................................................................... 2, 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

### I.    <u>INTRODUCTION</u>

Plaintiff Michael Moates ("Plaintiff") brings this action against Meta Platforms, Inc. ("Meta"), purporting to assert claims for breach of contract, promissory estoppel, and fraud, and for violations of the Texas Deceptive Trade Practices Act, the California Consumer Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, and the California Song-Beverly Consumer Warranty Act.  While various accusations are scattered throughout the Second Amended Complaint ("SAC"), each of Plaintiff's claims seeks to hold Meta liable for disabling his Facebook account in October 2020.  As established herein, Plaintiff's SAC fails in its entirety to assert a viable cause of action.

Plaintiff has failed to allege facts sufficient to assert a claim.  Indeed, each of Plaintiff's claims is replete with deficiencies.  For example, Plaintiff's breach of contract claim fails because Plaintiff has not alleged a provision in the applicable Facebook Terms of Service (or any other purported agreement) that Meta violated by disabling Plaintiff's Facebook account.  Further, Plaintiff's fraud claim fails because Plaintiff has not adequately alleged facts establishing *any* of the requisite prima facie elements—namely, that Meta made a false representation, that Meta knew the representation was false at the time it was made, or that it was intended to defraud Plaintiff.  And as for Plaintiff's California Consumer Legal Remedies Act claim, he wholly fails to allege that Meta made a deceptive representation in the purported "advertising" at issue.

Moreover, each of Plaintiff's claims is barred by Section 230 of the Communications Decency Act ("Section 230"), which protects interactive service providers like Meta from claims based on removal of content or users from its services.  Each of Plaintiff's claims—at bottom— seeks to hold Meta liable for disabling his Facebook account.  For these reasons, this Court should dismiss Plaintiff's entire Second Amended Complaint with prejudice.

### II.    <u>BACKGROUND</u>

Defendant Meta and its Facebook service help give people the power to build community and bring the world closer together.  Meta's relationship with the people who use Facebook—

- 1 -

including Plaintiff—is governed by the Facebook Terms of Service to which all users agree when creating a Facebook account.  Plaintiff Michael Moates claims to be a user of Facebook and various other Meta-owned services, including Instagram, Oculus, and CrowdTangle.  *See* SAC ¶¶ 15-30.  As part of the user-registration process in place when Plaintiff opened his account in 2014, Plaintiff was required to agree to Facebook's Terms of Service.  *See* Request for Judicial Notice ("RJN"), Levin Declaration in Support of RJN ("Levin Decl."), Ex. A ("2020 Facebook Terms of Service").  The Terms of Service applicable when Plaintiff created his account in 2014 required a user to acknowledge that, by continuing to use Facebook, the user accepts modifications to those terms posted on Facebook.  *See* RJN, Levin Decl., Exs. A, B.  In any event, neither the Terms of Service applicable when Plaintiff created his account nor the Terms applicable when Plaintiff was removed from Facebook contain a provision requiring Meta to keep Plaintiff on Facebook or with access to any of Meta's products.  RJN, Levin Decl., Exs. A, B.

Broadly speaking, the SAC's allegations fall into three categories, all of which stem from Meta removing Plaintiff from Facebook.  ***First,*** Plaintiff claims that Meta wrongfully disabled his Facebook account, which has deprived him of the opportunity to use Facebook, Instagram, Facebook Messenger, CrowdTangle, WhatsApp, and Oculus.  *See* SAC ¶ 38.  ***Second***, Plaintiff claims that Meta deprived him of access to information "required by a grand jury subpoena," which he received in August 2020.  SAC ¶ 40; Ex. 2.  ***Third***, Plaintiff erroneously claims that Meta made his "Oculus devices inoperable" by purportedly requiring a Facebook account to use those devices, which he alleges contradicts various uncited advertising statements.  SAC. ¶ 41.[1]

## III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

---

[1] This action was transferred from the Eastern District of Texas on August 2, 2022 following Meta's successful Motion to Transfer based on the forum selection clause in the Facebook Terms of Service.  ECF No. 30.  Plaintiff had previously filed *five* versions of his complaint in both Texas state and federal courts.  *See Michael Moates v. Facebook Inc*., Case No. 4:20-cv-00896; *Moates v. Facebook, Inc., et al*., Case No. 21-6407-431; *Moates v. Facebook, Inc., et al*., No. 4:21-cv-00694-ALM-KPJ.  On January 23, 2023, Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint.  ECF No. 49.  Plaintiff's opposition was due on February 6, 2023, but he did not file one.  *See* ECF No. 53.  On February 15, 2023, the Court gave Plaintiff "***a final opportunity*** to amend."  ECF No. 54.01 (emphasis added).

662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  The court must accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 664, 678.

IV.    **ARGUMENT**

     A.    **The Complaint Fails to State Any Cause of Action Against Meta.**

          1.    **First Cause of Action – Breach of Contract.**

       To plead a claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010).  Plaintiff claims that Meta breached the Terms of Service under multiple theories, including that Meta (1) disabled his "accounts" without cause or justification, (2) restricted his access to "information required by a [August 2020] grand jury subpoena," and (3) "render[ed] [his] Oculus devices inoperable" by purportedly requiring a Facebook account for use.  SAC ¶¶ 35-41.  Each theory fails.

       At the outset, for each purported breach, Plaintiff relies on the version of the Facebook Terms of Service applicable when he created his account.  But the Terms of Service applicable when Meta disabled Plaintiff's account in October 2020—as Plaintiff alleges—apply here.  *See* RJN, Levin Decl., Exs. A, B (requiring users to acknowledge that by continuing to use Facebook, they assent to modifications in the Terms); *see Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 n.1 (N.D. Cal. 2022) (noting that users impliedly agree to the Terms of Service by using the Facebook platform).  In any event, the Terms do not materially differ as to the pertinent obligations—*neither* version of the Terms of Service requires Meta to keep Plaintiff on Facebook, and they both allow Meta to *remove* Plaintiff from Facebook.

*First*, to the extent Plaintiff bases his breach of contract claim on Meta "disabling [his Facebook] accounts" (*see* SAC ¶¶ 38-39), Plaintiff's claim fails—neither version of the Facebook Terms of Service obligates Meta to continue providing Plaintiff with access to Facebook.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (finding no provision prohibited Facebook from terminating account in manner alleged); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (Facebook's Terms do not obligate Facebook to continue providing access to Facebook).  Courts that have rejected similar contract claims have "correctly recognized [that], while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations'" on Meta to keep content on its platform. *Caraccioli*, 167 F. Supp. 3d at 1064; *King*, 2019 WL 6493968, at *2 ("[T]here is nothing in the Terms of Use or other contract identified by King that could plausibly support a breach claim.").

Further, while Plaintiff alleges Meta breached its contract by disabling his account "without cause or justification," Plaintiff does not identify *any provision* of *either version* of the Terms of Service that prevents Meta from enforcing its Terms as it sees fit.  Indeed, the Facebook Terms of Service applicable in October 2020 vest Meta with the discretion to do exactly that: "If we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account."  RJN, Levin Decl., Ex. A, Section 4.2; *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 203 (2017) (the Terms of Service provide "in essence that Facebook has the discretion to remove content that violates Facebook policies").

*Second*, Plaintiff claims that Meta breached the Terms by withholding data associated with his deactivated accounts (*id.* ¶ 40), but he again fails to identify any provision(s) in any applicable contract that Meta breached, as is required to state a claim for breach of contract.  *See, e.g.*, *King v. Facebook Inc.,* 2022 WL 1188873, at *6 (N.D. Cal. April 20, 2022) (plaintiff failed to allege any "provision in the Terms of Service that suggests Facebook would not destroy content or, conversely, that Facebook had an obligation to retain content"); *Damner v. Facebook,*

- 4 -

*Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) (dismissing breach of contract claim where plaintiff "quote[d] incomplete phrases" from terms regarding safeguarding his information).[2]

*Third*, Plaintiff's breach of contract claim regarding his Oculus devices also fails because—*once again*—Plaintiff does not identify any provision in any applicable contract that Meta breached by purportedly "rendering [his] Oculus devices inoperable." SAC ¶ 41; *see Young*, 790 F. Supp. 2d at 1117 (noting plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached).  Because Plaintiff cannot point to any such provision, he resorts to supposed promises from "advertising" stating that Oculus users would be able to "discover new adventures" and "travel universes in blockbuster fantasies."  *Id.* These supposed "promises" do not come from the only contract identified in the SAC—the Facebook Terms of Service—nor do they plausibly relate to the *purported* "breach" at issue— Meta requiring a Facebook account to use Oculus. *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. July 30, 2009) (dismissing breach of contract claim because agreement did not "contain[] any promise by Google to enforce its terms of use").

In fact, Plaintiff cannot plausibly establish breach because—contrary to Plaintiff's claim—Meta did not make his Oculus devices "inoperable" by requiring a Facebook account for use.  Rather, according to the August 2020 press release that Plaintiff himself includes in his SAC (SAC ¶ 29), existing users of Oculus "[could] continue using [their] Oculus account"—without Facebook—for two additional years following the release.  Meta goes on to clarify that "if you choose not to merge your accounts at that time, *you can continue using your device*, but full functionality will require a Facebook account." *See* SAC ¶ 29.[3]

---

[2] Moreover, any claim based on Plaintiff's purported lost information should be dismissed because it is barred by the limitation of liability provision in the 2020 Facebook Terms of Service. Waivers of liability that are "clear, unambiguous and explicit bar claims that expressly fall within their scope."  *Murphy*, 60 Cal. App. 5th at 25.  Here, Meta disclaims liability for certain damages, including for any "lost…information or data."  RJN, Levin Decl., Ex. A. Thus, Meta cannot be held liable for any lost data arising from Meta disabling Plaintiff's Facebook account.  *See, e.g., King v. Facebook Inc.,* 2022 WL 1188873, at *6 (N.D. Cal. April 20, 2022) (enforcing Meta's limitation of liability provision and finding it expressly barred plaintiff's claim for special damages).

[3] Plaintiff also fails to allege how Meta's purported breaches were the proximate cause of any of his supposed damages, including "the costs and expenses associated with Plaintiff's purchase and placement of ads" on his Facebook account. SAC ¶ 119; *see, e.g., King*, 2022 WL 1188873, at *4 (finding Plaintiff failed to show destruction

1

Accordingly, Plaintiff's breach of contract claim fails.

2

        **2.**      <u>**Second, Third, and Fourth Causes of Action – Violations of California**</u>

3

<u>**Consumer Protection Statutes.**</u>

4

Plaintiff purports to bring near-identical claims for violations of (1) the California

5

Consumer Legal Remedies Act ("CLRA"), (2) California's Unfair Competition Law ("UCL"),

6

and California's False Advertising Law ("FAL"). Each claim fails for similar reasons.

7

        **a.**      <u>**Plaintiff's CLRA claim fails.**</u>

8

In general, to bring a CLRA claim,[4] the plaintiff must show "not only that a defendant's

9

conduct was deceptive but that the deception caused them harm." *Bower v. AT&T Mobility,* LLC,

10

196 Cal.App.4th 1545, 1556 (2011) (affirming dismissal of CLRA claim). The provisions of the

11

CLRA proscribe "fraudulent affirmative misrepresentations," and thus "must satisfy Rule 9(b)'s

12

heightened pleading standards." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161. Here,

13

Plaintiff claims that Meta violated the CLRA by making representations regarding Oculus, and

14

then making his "purchased products inoperable" by purportedly requiring a Facebook account

15

for use. Plaintiff alleges this conduct was contrary to supposed advertising, including that an

16

Oculus user can "discover new adventures" and "master epic challenges or revisit classic

17

moments." SAC ¶ 47.

18

      *First*, Plaintiff does not allege any facts establishing that Meta made a false representation

19

that would support his CLRA claim. *See, e.g.*, *Myers v. Starbucks Corp.*, 536 F.Supp.3d 657, 664

20

(C.D. Cal. May 5, 2021) (dismissing CLRA claim where plaintiff failed to allege specific facts

21

showing the description of defendant's chocolate product was "false or misleading."). This alone

22

is fatal to Plaintiff's claim. Indeed, the purported "misrepresentations" simply relate to the fun a

23

---

24

of her content was casually related to Facebook's failure to provide a sufficient explanation of why her account was disabled).

25

[4] Plaintiff purports to bring an identical claim under the Texas Deceptive Trade Practices Act ("DTPA"). Any such

26

claim under the DTPA fails because both versions of the Facebook Terms of Service contain an enforceable California choice-of-law provision, requiring application of California substantive law. *See, e.g.*, RJN, Levin Decl., Ex. A ("the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without

27

regard to conflict of law provisions"); *see, e.g., Simulados Software, Ltd. v. Photon Infotech Private*, Ltd., 40 F.

28

Supp. 3d 1191 (N.D. Cal. 2014) (dismissing DTPA claim because the contract's choice-of-law provision required the court to apply California substantive law).

1   user can experience when using Oculus—e.g., "[e]nter new realities, [t]ravel universes in

2   blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in

3   innovative workspaces."  SAC ¶ 47.  *None of these purported promises*—which Plaintiff includes

4   in the SAC without a source—even plausibly relate to whether Plaintiff was required to have a

5   Facebook account to use his Oculus devices.

6          Additionally, the alleged representations are generalized and unspecific statements,

7   sometimes considered by courts to be non-actionable puffery, which cannot support a CLRA (*or

8   other fraud-based*) claim.  "Generalized, vague, and unspecified assertions constitute 'mere

9   puffery' upon which a reasonable consumer could not rely, and hence are not actionable."

10   *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1139 (C.D. Cal.2005); *Baltazar v. Apple, Inc.*,

11   2011 WL 3795013, at *4–6 (N.D. Cal. Aug. 26, 2011) (dismissing UCL, FAL, and CLRA claims;

12   statement that the iPad can be used "just like a book" is mere puffery); *Prager University v.

13   Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (affirming decision that YouTube's statements

14   that the platform will "help [one] grow" and "giv[e] [one] tools, insights and best practices" for

15   using YouTube's products were non-actionable).

16          *Second*, even if the statements could plausibly support Plaintiff's CLRA claim—which

17   they cannot—Plaintiff does not allege any of the circumstances surrounding the purported fraud,

18   including who made the representations, when they made the representations, where they made

19   the representations, and so on, as is required to state a claim under Rule 9(b).  *See, e.g.*, *Kearns v.

20   Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (affirming dismissal where plaintiff failed to

21   allege the circumstances surrounding the alleged misrepresentations, including "what [they]

22   specifically stated," "when he was exposed to them," or "which [ones] he relied upon in making

23   his decision to buy a CPO vehicle."); *Frenzel v. AliphCom*, 76 F.Supp. 3d 999, 1011 (N.D. Cal.

24   2014) (dismissing CLRA claim where plaintiff offered only "vague, unsupported allegation and

25   [did] not explain who made the representation, when and where it was made, or what specific

26   information it conveyed.").

27

28

### b.     **Plaintiff's UCL claim fails.**

California's Unfair Competition Law bars any "business act or practice" that is (1) "fraudulent," (2) "unlawful," or (3) "unfair."  Bus. & Prof. Code § 17200.  Conduct is "'fraudulent' under the UCL if the conduct is 'likely to deceive as 'governed by the 'reasonable consumer' standard."  *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1011 (N.D. Cal. 2012) (granting motion to dismiss UCL claim).  California courts have consistently held that where the "plaintiff's unfair prong claims overlap entirely with their claims of fraud," the unfair prong claim cannot survive.  *Ahern v. Apple Inc*., 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019).  Plaintiff claims Meta violated the UCL by purportedly making his Oculus devices inoperable.  While Plaintiff does not specify which prong of the UCL Meta purportedly violated, his UCL claim fails under all three prongs.

*First*, to the extent Plaintiff's UCL claim is based on the **fraudulent prong**, it fails because, as explained further above (*see* Section VI.A.2, *supra*), Plaintiff has not alleged sufficient facts to show that Meta made any false or misleading statements regarding Oculus.  *See, e.g.*, *Garcia v. Sony Computer Entm't Am, LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012) (dismissing UCL claim where representations regarding console compatibility were not clearly "false at the time when made").  Crucially, none of the purported advertising included in the SAC even discusses Meta's requirements to use an Oculus device.  *See, e.g.*, SAC ¶ 53 ("Travel universes in blockbuster fantasies…"); *Price v. Apple*, 2022 WL 1032472, at *6 (N.D. Cal. April 6, 2022) (dismissing UCL claim where plaintiff did not adequately allege that Apple made any false statements in its marketing).

*Second*, any claim under the **unfair prong** fails because it "overlap[s] entirely with [Plaintiff's] claims of fraud," and as such, cannot survive.  *Ahern v. Apple Inc*., 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) (dismissing unfair and fraud prong claims where both claims were based on allegations that Apple failed to disclose that computers had certain defects).  Indeed, Plaintiff bases his entire UCL claim on the same alleged misconduct—*i.e.*, Meta's purported misrepresentation that Plaintiff would not need a Facebook account to use Oculus.  *See, e.g.*, *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074 (dismissing UCL claim where the allegations

- 8 -

indicated Plaintiff's unfair prong was based on the same contentions as fraudulent prong).

Finally, as Plaintiff fails to state a claim under any other law (*see* Section IV.A.2, *supra*), he cannot allege a violation of the **UCL unlawful prong**.  The unlawful prong "borrows violations of other laws and treats them as unlawful practices, which the UCL then makes independently actionable." *Elias v. Hewlett–Packard Co*., 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).

Because Plaintiff cannot state a claim under any other law, he necessarily cannot state a claim under the UCL unlawful prong.  *I.B. ex rel. Fife*, 905 F. Supp. 2d at 1010 (N.D. Cal. 2021) (dismissing UCL unlawful prong claim where court already held plaintiff's CLRA claim failed).

### c.   Plaintiff's FAL claim fails.

California's False Advertising Law makes it "unlawful for any [] business to make or distribute any statement to induce the public to enter into a transaction 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'"  *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 318 (2022).  The FAL "substantively overlap[s]" with the fraudulent prong of the UCL and the "burden under these provisions is the same: To prevail on a claim under the false advertising law, [the plaintiff] must show that "members of the public are likely to be deceived ...."  *Id.*

Plaintiff's FAL claim fails for the same reasons as his UCL and CLRA claims fail (*see* Sections IV.A.2.a and IV.A.3.b *supra*)—Plaintiff does not allege *any facts* establishing that Meta made a false or misleading representation regarding any purported requirements to use Oculus. *Hadley v. Kellog Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) (dismissing FAL, CLRA, and UCL claims together for the same reasons).

### 3.   Fifth Cause of Action – Violation of the California Song-Beverly Consumer Warranty Act.

A plaintiff pursuing an "express warranty" claim under the Song–Beverly Consumer Warranty Act ("Song-Beverly Act") has the burden to prove the following elements: "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was

- 9 -

presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Gonzalez v. Drew Industries Inc.*, 750 F. Supp. 2d 1061,1073 (C.D. Cal. 2007). Crucially, the California Supreme Court has established that the "Song-Beverly Consumer Warranty Act only applies to consumer goods actually ***purchased or leased in California***." *Cummins, Inc. v. Superior Court*, 36 Cal.4th 478 (2005) (emphasis added).   Here, Plaintiff claims Meta breached an "express warranty" providing that the "products were fit for their intended purpose and would perform as advised."  SAC ¶ 67.  Plaintiff's claim under the Song-Beverly Consumer Warranty Act fails.[5]

As an initial matter, Plaintiff has not alleged that he purchased any Oculus device in California.  To the extent he purchased his devices outside of California (which seems likely given his residency), his claim necessarily fails.  *Cummins, Inc.*, 36 Cal.4th at 478.  Further, Plaintiff has not alleged *any of the requisite* elements of a Song-Beverly Act claim, including that the product had a "defect or nonconformity covered by the express warranty" or that he presented the product to "an authorized representative of the manufacturer for repair."  *Gonzalez*, 750 F. Supp. 2d at 1073.  In fact, Plaintiff has failed to plead the specific details of any express warranty that Meta provided to users regarding Oculus.  *See* Cal. Civ.Code § 1791.2(a).  Plaintiff's claim fails.

### 4.    Sixth Cause of Action – Promissory Estoppel.

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *US Ecology, Inc. v. State,* 129 Cal. App. 4th 887, 901 (2005).

---

[5] Plaintiff does not purport to bring a claim for breach of the *implied* warranty under the Song-Beverly Act.  In any event, such a claim would fail for similar reasons.  Plaintiff does not allege that any device is not merchantable. Indeed, to be merchantable, a device must "(1) pass without objection in the trade under the contract description; (2) [be] fit for the ordinary purposes for which those goods are used; (3) [be] adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label." *Birdsong v. Apple*, 590 F.3d 955, n. 4 (9th Cir. 2009) (affirming dismissal of implied warrant claim).  Plaintiff fails to allege his devices do not meet these elements.

- 10 -

1    Here, Plaintiff claims that Meta "made a promise that [he] could use his Oculus devices

2    without having to use a Facebook account," but subsequently "made them inoperable" by

3    disabling his Facebook account. SAC ¶ 72. But Plaintiff has not identified a **_clear and_**

4    **_unambiguous promise_** made by Meta to provide Plaintiff with continuous access to Oculus.[6]

5    This alone is fatal to Plaintiff's promissory estoppel claim. *See, e.g.*, *Twit, LLC v. Twitter, Inc.*,

6    2018 WL 2431474, at *4 (N.D. Cal. May 30, 2018) (promise must be "definite enough that a

7    court can determine the scope of the duty"); *Murphy*, 60 Cal. App. 5th at 39 (dismissing claim

8    where Plaintiff did "not allege[ ] Twitter ever made a specific representation directly to [plaintiff]

9    [] that they would not remove content from platform"). Additionally, Plaintiff has failed to

10   adequately plead—beyond conclusory recitations of the elements—any other element of

11   promissory estoppel, including that he relied on any purported promise, or that such reliance was

12   both reasonable and foreseeable. *See, e.g.*, *Izsack v. Wells Fargo Bank, N.A.*, 2014 WL 262126,

13   at *5 (N.D. Cal. Jan. 23, 2014) (dismissing promissory estoppel claim without leave to amend

14   where Plaintiff failed to adequately allege reliance). Accordingly, Plaintiff's promissory estoppel

15   claim fails and should be dismissed with prejudice.

16              **5.        Seventh Cause of Action – Fraud.**

17   Under California law, the "indispensable elements of a fraud claim include a false

18   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

19   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Any claim sounding in

20   fraud is subject to the "heightened pleading standards of Rule 9(b)." *See Gray v. Preferred Bank*,

21   2010 WL 11508777, at *3 (S.D. Cal. June 10, 2020). Plaintiff alleges that Meta committed fraud

22   by requiring a Facebook account to use his Oculus devices. SAC ¶¶ 80-85. Plaintiff's claim

23   fails.

24   While Plaintiff asserts that Meta "made a false representation" by allegedly advertising

25

26   ---
     [6] The only "support" Plaintiff provides for the fact that Meta promised users they would *not* need a Facebook account

27   to use Oculus comes from an August 20, 2020 opinion article cited in the SAC, *see* ¶ 29
     (https://www.roadtovr.com/oculus-guarantee-promise-facebook-log-in/). The article states that Oculus' founder (*not*

28   *Meta*) posted on Reddit—*over eight years ago*—that "you won't need to log into your Facebook account every time
     you use the Oculus Rift."

1    that "the Oculus devices would function without requiring the use of a Facebook account,"

2    Plaintiff fails to identify any such promise (nor could he, *see* Section IV.A.1, *supra*).  *See, e.g.*,

3    *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at \*7 (N.D. Cal. Oct. 3, 2022) (dismissing fraud

4    claim without leave to amend where plaintiff failed to allege any specific representation made by

5    Meta regarding removing content).  This alone is fatal to Plaintiff's fraud claim.  *See, e.g.*, *Ebeid*

6    *v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal. May 9, 2019) (dismissing fraud claim where

7    plaintiff failed to adequately allege a misrepresentation); *Carter v. Rasier-CA, LLC*, 2017 WL

8    4098858, at \*4 (N.D. Cal. Sept. 15, 2017) (dismissing fraud claim where fact that plaintiff

9    encountered issues accessing Uber app did not render statement about driver's ability to "work

10   when you want or need to work" false when made).

11          Further, even if Plaintiff had identified any false statement regarding Oculus (*he did* not),

12   he does not allege facts establishing any of the other elements of fraud, including that (1) Meta

13   knew its statements were false, (2) Meta intended to defraud him with those statements, or (3) he

14   justifiably relied on those statements. *See, e.g.*, *Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131,

15   1147 (N.D. Cal. 2013) (dismissing fraud claim where statement that Apple intended to mislead

16   Plaintiff with representations about products provided no basis to infer that Apple made those

17   statement with intent to defraud).  Indeed, Plaintiff's conclusory allegation that Meta "made this

18   false representation with the intent to deceive [him]" is wholly insufficient to show that Meta

19   made any statement with the intent to defraud—*or even that any purported statement was false*—

20   at the time the statement was made.  Accordingly, Plaintiff has wholly failed to allege the

21   requisite elements of fraud, much less achieved the heightened particularity required to state a

22   claim under Rule 9(b).

23   **B.**     **Section 230 of the Communications Decency Act Bars Plaintiff's Claims.**

24          All of Plaintiff's claims also fail because they are barred as a matter of law under Section

25   230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 et seq.[7]  Section 230 "protects

26   ───────────────────

27   [7] To the extent Plaintiff attempts to state a claim under "Section 230," Plaintiff fails because no such claim exists—
     both Section 230(c)(2) and (c)(1) are immunity provisions, not causes of action.  *See, e.g.*, *King v. Facebook, Inc.*,
     572 F. Supp. 3d 776, 782 (N.D. Cal. Nov. 12, 2021) (dismissing "the CDA claim because there is no private right of

28   action under the statute.").

- 12 -

certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).  Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007).  Section 230 is to be "construed broadly, 'to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Cross*, 14 Cal. App. 5th 190, 206 (2017).  Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1).

### 1.      Meta is an interactive computer service provider.

Plaintiff concedes that Meta is "an interactive computer service" provider.  SAC ¶ 114. And courts have uniformly held that Meta meets Section 230's "interactive computer service provider" definition.  *See e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 ("it is undisputed that Facebook is an interactive computer service provider"); *Lloyd*, 2022 WL 4913347, at *8 ("Meta and/or Facebook is an interactive computer service provider").

### 2.      The content at issue was provided by another information content provider.

The information for which Plaintiff seeks to hold Defendants liable must have been provided by an "information content provider" other than Defendants.  47 U.S.C. § 230(c)(1). This inquiry is simple if, as here, the "complaint admits that [the plaintiff] is the source of the information that [Meta] removed" while "nowhere alleg[ing] that [Meta] provided, created, or developed any portion" of the content.  *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1035-6 (N.D. Cal. 2019).  Here, Plaintiff's claims involve allegations that Plaintiff himself—not Defendants—created the content (*i.e.,* his own accounts) at issue.  *See generally* SAC.  Accordingly, Section 230(c)(1)'s second requirement is met.  *See, e.g., Ebeid*, 2019 WL

- 13 -

1    2059662, at *7 (finding requirement met where plaintiff was source of content); *Fed Agency of*

2    *News LLC*, 395 F. Supp. 3d at 1305 (same).[8]

3              **3.       Each of Plaintiff's claims seeks to treat Meta as a "publisher" or**
                          **"speaker" of the third-party content.**
4
5             Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to

6    hold a service provider liable for its purported exercise of "editorial functions"—such as

7    "deciding whether to publish, withdraw, postpone or alter content."  *Barnes v. Yahoo!, Inc.*,

8    570 F.3d 1096, 1101–1102 (9th Cir. 2009).  What matters here is not the "name of the cause of

9    action," but "whether the duty that the plaintiff alleges the defendant violated derives from the

10   defendant's status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes

11   liability."  *Id.*; *see Caraccioli*, 167 F. Supp. 3d at 1065 (dismissing breach of contract claim under

12   Section 230); *Calise*, 2022 WL 1240860, at *4 (N.D. Cal. April 27, 2022) (dismissing contract

13   claims under Section 230).

14            Here, at bottom, each of Plaintiff's claims stem from Meta removing Plaintiff from

15   Facebook.  The Ninth Circuit has held that such "activity that can be boiled down to deciding

16   whether to exclude material that third parties seek to post online is perforce immune under section

17   230."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,

18   1163 (9th Cir. 2008) (*en banc*); *Sikhs for* Justice, 697 Fed. Appx. at 526 (Section 230 applies

19   because "SFJ seeks to hold Facebook liable as a publisher for hosting, and later blocking, SFJ's

20   online content.").  Indeed, each of Plaintiff's claims is premised on his assertion that Meta

21   improperly disabled Plaintiff's Facebook account, depriving him of access to his content, data,

22   and other services.  *See generally* SAC.  Courts consistently bar similar claims related to Meta's

23   decision to disable user accounts and block access to Facebook content.  *See, e.g.*, *Zimmerman v.*

24   *Facebook, Inc.*, 2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) (dismissing claims relating to

25   defendants' decision to block access to plaintiff's account under Section 230); *Fed. Agency of*

26   _____

27   [8] Plaintiff asserts that Meta is not a "neutral intermediary" because its policies "have been shown to" "amplify"
     certain types of content.  SAC ¶ 108.  But to *not* qualify for Section 230 immunity, Meta must have functioned as the
28   information content provider "for the portion of the statement or publication ***at issue***."  *Rigsby v. GoDaddy Inc.*, 2023
     WL 1489914, at *5 (9th Cir. Feb. 3, 2023).  Plaintiff has made no such claim.

                                            - 14 -

*News LLC*, 432 F. Supp. 3d at 1119 (holding that Section 230 barred claims where they were based on "Facebook's decision not to publish [Plaintiffs'] content" by terminating plaintiffs' accounts); *Ebeid*, 2019 WL 2059662, at *3 (dismissing claims related to Facebook's decision to remove plaintiff's Facebook posts). The fact that Plaintiff contends "there is no indication that [he] engaged in any conduct that would be considered obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," is irrelevant to the analysis. *Force v. Facebook, Inc.*, 934 F.3d 53, 70 (2d Cir. 2019) ("Whatever prototypical situation its drafters may have had in mind, § 230(c)(1) does not limit its protection to situations involving 'obscene material' provided by others, instead using the expansive word 'information.'").[9]

**C.    Plaintiff Should Not Be Granted Leave To Amend.**

Since the onset of this litigation, Plaintiff has filed *six* different versions of his complaint with knowledge of the deficiencies Meta already identified—and Plaintiff has wholly failed to cure them. Leave to amend is inappropriate if "the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).

*First*, as established above (*see* Section IV.A, *supra*), Plaintiff has failed to allege sufficient facts to state any claim in his SAC and proposes no additional facts that could be pled in yet another amended complaint to assist his claims.

*Second*, Plaintiff's claims will be barred by Section 230(c)(1) no matter what additional facts he pleads (*see* Section IV.B, *supra*)—which is why courts generally deny leave to amend when there is CDA immunity, which cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1265-66 (9th Cir. 2016). It is thus apparent that "any proposed amendment would be futile" and that the Court should dismiss with prejudice. *Reddy v. Litton Indus., Inc*., 912 F.2d 291, 296 (9th Cir. 1990).

---

[9] Plaintiff additionally argues that Section 230 is unconstitutional. The Court need not consider such an argument because Plaintiff's claims "can be resolved on non-constitutional grounds." *Huber v. Biden*, 2022 WL 827248 (N.D. Cal. March 18, 2022). Moreover, courts in this district have held that the application of Section 230 as a defense is not unconstitutional. *See Divino Group LLC v. Google LLC*, 2022 WL 4625076, at *18 (N.D. Cal. Sept. 30, 2022) (holding plaintiffs did not establish application of Section 230(c) as a defense was unconstitutional).

- 15 -

1    **V.**     <u>**CONCLUSION**</u>

2        For the foregoing reasons, Meta respectfully requests that this Court dismiss the SAC in

3 its entirety, with prejudice.

4

5 Dated: April 6, 2023                    JACOB M. HEATH
                                 ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7

8                          By:      */s/ Jacob M. Heath*

9                                   JACOB M. HEATH
                                  Attorney for Defendant

10                                   Meta Platforms, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

META'S MOTION TO DISMISS
CASE NO. 3:22-CV-04478-JD