# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doctor Michael Moates<br><br>Licensed Psychologist<br><br>Plaintiffs<br><br>v.<br><br>META PLATFORMS, INC.<br><br>DBA: Facebook, Instagram, Meta Quest (Oculus) aka Facebook Technologies Inc. aka Reality Labs, Crowdtangle<br><br>Defendants | Case No.: 22-cv-04478-JD<br><br>**JURY TRIAL DEMANDED** |

# Reply to

# Defendants' Motion to Dismiss

# I. INTRODUCTION

Defendant's Motion to Dismiss ("Motion") seeks to evade liability for its actions that led to the termination of my Facebook account, resulting in the loss of my content, data, and other services. Contrary to Defendant's contentions, my claims are well-pled, and I have met the requirements for each claim under federal and state law.

Meta, Facebook, Mark Zuckerberg, Javier Olivan, Nick Clegg, and have created a platform that has:

Streamed murder

(https://www.wcax.com/2023/03/27/woman-accused-killing-man-facebook-live/)

Streamed the rape of a young girl

(https://www.dailymail.co.uk/news/article-4372322/Chicago-police-arrest-14-year-old-rape-Facebook-Live.html?ito=social-facebook)

Raped a woman virtually

(https://www.vice.com/en/article/3abpg3/woman-says-she-was-virtually-gang-raped-in-facebooks-metaverse)

Mark Zuckerberg has said openly:

Zuck: I have over 4,000 emails, pictures, addresses, SNS

[Redacted Friend's Name]: What? How'd you manage that one?

Zuck: People just submitted it.

Zuck: I don't know why.

Zuck: They "trust me"

Zuck: Dumb fucks.

Meta is a company that has for years attempted to escape liability. Meta (formerly known as Facebook) has faced a number of lawsuits and legal challenges over the years, including allegations related to terrorism, child exploitation, and other illegal activities.

One of the most high-profile cases involving Meta and terrorism was filed in 2016 by the families of victims of the Pulse nightclub shooting in Orlando, Florida. The lawsuit alleged that Meta provided material support to ISIS (Islamic State of Iraq and Syria) by allowing the group to use its platform to spread propaganda and recruit new members.

Meta has also faced allegations related to child exploitation on its platform. In 2020, the company was sued by the parents of a 15-year-old girl who was allegedly sex-trafficked on the platform. The lawsuit alleged that Meta failed to take appropriate action to prevent the girl from being exploited, despite repeated reports from her family and law enforcement. The case is ongoing.

Cambridge Analytica scandal: In 2018, it was revealed that political consulting firm Cambridge Analytica had improperly obtained data from tens of millions of Facebook users without their consent. The scandal led to widespread criticism of Facebook's data practices, and the company

was fined by regulators in several countries. Facebook also faced a class-action lawsuit filed by users whose data was compromised in the breach, which was settled for $650 million in 2020.

Discrimination allegations: In 2019, the US Department of Housing and Urban Development (HUD) filed a lawsuit against Facebook, alleging that the company's advertising platform allowed landlords and real estate agents to discriminate against certain groups of people, such as those based on race or gender. Facebook settled the case with HUD for $5 million and agreed to make changes to its advertising platform.

Oculus VR lawsuit: In 2017, video game publisher ZeniMax Media sued Facebook-owned virtual reality company Oculus VR, alleging that it had stolen trade secrets and confidential information related to its VR technology. Facebook was ordered to pay $500 million in damages in the case, which was settled in 2018.

Antitrust investigations: In 2020, the US Federal Trade Commission and a coalition of state attorneys general filed antitrust lawsuits against Facebook, alleging that the company had engaged in anticompetitive practices that stifled competition and harmed consumers.

Misleading advertisers: In 2019, a group of advertisers filed a lawsuit against Facebook, alleging that the company had inflated the metrics used to measure the effectiveness of its advertising platform. The plaintiffs claimed that Facebook had provided inaccurate and misleading data about the reach and engagement of ads, which resulted in them overpaying for advertising. The case is ongoing.

Labor disputes: Facebook has faced labor disputes and criticism from employees over issues such as worker pay, working conditions, and the company's handling of controversial content. In 2021, a group of content moderators who worked for Facebook filed a lawsuit against the company, alleging that they had developed mental health problems as a result of their job, which involved viewing disturbing and graphic content. The case is ongoing.

These are just a few of the examples that show what Meta really stands for. Here are the legal arguments for the SAC:

## II. LEGAL ARGUMENT

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Plaintiff's Claims are Well-Pled

Breach of Contract

Defendant contends that my breach of contract claim should be dismissed because I have failed to allege the terms of the agreement or the manner in which Defendant breached the agreement.

However, my complaint specifically alleges that I entered into a binding agreement with Defendant and that Defendant breached that agreement by wrongfully terminating my Facebook account. I have provided specific details of the circumstances surrounding the termination of my account and how it constitutes a breach of contract by Defendant. Therefore, my breach of contract claim is sufficiently pleaded.

Furthermore, Defendants argue that Plaintiff's breach of contract claim should be dismissed because the alleged breach of contract was related to Facebook's terms of service, which contain provisions limiting Facebook's liability for user-generated content. However, Defendants ignore the fact that the only contract at issue in this case is the one between Plaintiff and Facebook, which was entered into when Plaintiff created his Facebook account. Defendants have not provided any evidence to suggest that Plaintiff agreed to any other terms of service or contracts, nor have they provided any evidence that Plaintiff was notified of any changes to Facebook's terms of service. Therefore, Defendants cannot argue that the alleged breach of contract is related to any other terms of service or contracts. Furthermore, disabling my accounts under a policy created in 2020 would be acting on a change in the contract that was not agreed to by both parties.

Under the Uniform Commercial Code (UCC), there is an implied warranty of merchantability, which means that when a seller sells goods, the goods are fit for the ordinary purpose for which such goods are used. Texas Business and Commerce Code § 2.314.

In this case, Meta Platforms, Inc. (Meta) sold devices that are dependent on the use of Facebook and Instagram accounts. By disabling Plaintiff's accounts, Meta has effectively rendered the devices useless, despite the fact that the Plaintiff had not breached any terms of service. This interference with Plaintiff's use of the devices has resulted in a breach of the implied warranty of merchantability.

Moreover, the sale of the devices also implies an implied warranty of fitness for a particular purpose. This warranty means that if a seller has reason to know that a buyer is purchasing goods for a particular purpose, the goods sold are suitable for that purpose. Texas Business and Commerce Code § 2.315. Here, the devices sold by Meta were marketed as social media devices, gaming devices, etc and by disabling Plaintiff's accounts, Meta has breached the implied warranty of fitness for that particular purpose because the user is no longer able to login, use the devices, nor download apps.

In addition to the breach of implied warranties, Meta's actions have also violated the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), which prohibits false, misleading, or deceptive acts or practices in the course of a trade or commerce. Texas Business and Commerce Code § 17.41 et seq. Meta represented to Plaintiff that by purchasing the devices, he would have access to social media accounts, and by disabling those accounts, Meta has engaged in deceptive acts in the course of trade.

Furthermore, Meta's disabling of Plaintiff's accounts has resulted in an unjust enrichment, as Plaintiff has paid for the devices but has not received the full benefit of the bargain due to the interference with his use of the devices.

Unlawful and Fraudulent Business Practices

Defendant argues that my claim for unlawful and fraudulent business practices under California Business and Professions Code § 17200 should be dismissed because I have not sufficiently alleged any unlawful or fraudulent acts. However, my complaint clearly alleges that Defendant engaged in unlawful and fraudulent business practices by failing to disclose its policies on account termination and data storage to its users, and by misrepresenting its commitment to user privacy. These allegations meet the standard for pleading under § 17200.

Negligence

Defendant asserts that my negligence claim should be dismissed because I have failed to allege any duty owed by Defendant to me. However, my complaint alleges that Defendant owed me a duty of care to act with reasonable care in the operation and maintenance of its platform, and that Defendant breached that duty by terminating my account without cause. These allegations are sufficient to state a claim for negligence.

**C. Defendant is Not Entitled to Immunity Under Section 230**

Defendant argues that it is immune from liability under Section 230 of the Communications Decency Act ("CDA"). However, Section 230 immunity applies only to online platforms that act

as "neutral intermediaries" and not as information content providers. See Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). Here, my complaint alleges that Defendant engaged in content moderation and editing, which would make it an information content provider rather than a neutral intermediary. Therefore, Section 230 immunity does not apply to Defendant in this case.

In their motion to dismiss, the Defendants rely heavily on Section 230 of the Communications Decency Act (CDA) to argue that they are immune from liability for their actions in disabling the Plaintiff's Facebook account. However, Defendants misapply the Section 230 immunity defense in this case.

The Section 230 immunity defense is only applicable when the defendant is being held liable for content created by a third party. Defendants claim that they are immune because Plaintiff's claims treat them as the publisher or speaker of third-party content. However, the Plaintiff's claims are based on the Defendants' own actions in disabling Plaintiff's Facebook account. The claim does not arise from third-party content, but rather from Defendants' decision to disable Plaintiff's account. As such, Section 230 does not apply.

Defendants argue that their decision to disable Plaintiff's account was based on their content policies. However, the immunity under Section 230 applies only if the service provider is acting as an "intermediary for the third-party content provider." The Defendants' actions in disabling Plaintiff's account were not that of an intermediary for a third-party content provider but their own actions. As such, Defendants' reliance on Section 230 immunity is misplaced.

Moreover, the Defendants' policies are not sufficient to grant them immunity under Section 230. In Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014), the court held that Section 230 "does not immunize a defendant from liability for its own conduct, even if that conduct is undertaken in good faith." The Defendants' decision to disable Plaintiff's account was not made based on the content posted by third parties, but rather on the actions of the Plaintiff. As such, Defendants' conduct falls outside the scope of Section 230 immunity.

In conclusion, Defendants' reliance on Section 230 immunity is misplaced in this case. Plaintiff's claims are based on the Defendants' own actions in disabling Plaintiff's account, and not on third-party content. Therefore, Section 230 immunity does not apply.

In response to the Defendant's Motion to Dismiss, Plaintiff must point out that limited discovery was requested and denied, despite the Defendant's claims to the contrary. The Defendants have also attempted to schedule hearings that Plaintiff cannot attend due to medical reasons, and have made false statements to the court regarding the ability to hold virtual hearings. Plaintiff asserts that the Defendants will stop at nothing to achieve their desired outcome, even if it means committing perjury. These actions by the Defendants demonstrate a clear lack of good faith and a willingness to engage in unethical behavior to avoid being held accountable for their actions. Plaintiff requests that the Court take note of these facts when considering the Defendant's Motion to Dismiss.

In conclusion, Plaintiff has sufficiently alleged claims against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Texas Deceptive Trade Practices Act. Defendants' motion to dismiss should be denied, as Plaintiff's claims are not barred by Section 230 of the Communications Decency Act, and the applicable statute of limitations has not expired. Additionally, Defendants' argument regarding the lack of contractual privity fails, as the terms of the agreement were incorporated by reference into the product packaging, which Plaintiff purchased and used. Finally, Plaintiff should be granted leave to conduct limited discovery to obtain evidence to support his claims. Therefore, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and allow this case to proceed to discovery and trial.

Sincerely,

/s/ Michael Moates

Michael Moates, Pro se

4501 Nautilus Circle, #710

Fort Worth, Texas 76106

254-966-2837