JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 March Road
Menlo Park, CA 94025
Telephone: (650) 614-7470
Facsimile: (650) 614-7401

MELISSA LEVIN (SBN 328146)
melissalevin@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL MOATES,

        Plaintiff,

    v.

META PLATFORMS, INC. et al.,

        Defendants.

Case No. 3:22-cv-04478-AMO

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Hearing Date:   June 22, 2023
Time:              2:00 pm
Dept:              19
Judge: Honorable Araceli Martinez-Olguin

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.  The Complaint Fails to State Any Cause of Action Against Meta ........................ 1

        1.  Plaintiff's breach of contract claim fails ................................................. 1

        2.  Plaintiff's Unfair Competition Law claim fails ........................................ 3

        3.  Plaintiff fails to address Meta's challenges to his claims for fraud, promissory estoppel, and for violations of the CLRA, FAL, and Song-Beverly Act ..................................................................................... 5

    B.  Section 230 of the Communications Decency Act Bars Plaintiff's Claims ........... 6

        1.  Section 230 applies to claims involving Plaintiff's own content ............... 7

    C.  Plaintiff Should Not Be Granted Leave to Amend ................................................ 7

III. CONCLUSION .............................................................................................................. 8

- i -

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ahern v. Apple Inc.*,
5
    411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................... 4

6

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
7
    2017) .................................................................................................................... 2, 8

8

*Cervantes v. Countrywide Home Loans, Inc.*,
9
    656 F.3d 1034 (9th Cir. 2011).................................................................................. 8

10

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017).................................................................................... 3

11

12

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................ 2, 7

13

*Fed. Agency of News LLC v. Facebook, Inc.*,
14
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) .................................................................. 7

15

*Garcia v. Sony Computer Entm't Am, LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................................................. 4

16

*Goddard v. Google, Inc.*,
17
    640 F. Supp. 2d 1193 (N.D. Cal. July 30, 2009)...................................................... 3

18

*Gonzalez v. Drew Industries Inc.*,
19
    750 F. Supp. 2d 1061 (C.D. Cal. 2007)................................................................... 5

20

*Herskowitz v. Apple, Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .................................................................. 6

21

22

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................... 3

23

*I.B. ex rel. Fife v. Facebook, Inc.*,
24
    905 F. Supp. 2d 989 (N.D. Cal. 2021) .................................................................... 4

25

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016)................................................................................. 8

26

27

*King v. Facebook, Inc.*,
    2021 WL 5279823 (N.D. Cal. Nov. 21, 2021).................................................... 5, 8

28

- ii -

*King v. Facebook Inc.*,
    2022 WL 1188873 (N.D. Cal. April 20, 2022) .......................................................... 4

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. 2022) ................................................................... 2, 6

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................ 8

*Myers v. Starbucks Corp.*,
    536 F.Supp.3d 657 (C.D. Cal. May 5, 2021) ..................................................... 5

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 (9th Cir.
    2017) ............................................................................................................. 7, 8

*Twit, LLC v. Twitter, Inc.*,
    2018 WL 2431474 (N.D. Cal. May 30, 2018) .................................................... 6

*Young v. Facebook, Inc.*
    790 F.Supp.2d 1110 (N.D. Cal. 2011) .............................................................. 2

*Zimmerman v. Facebook, Inc.*,
    2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) .................................................... 7

**Statutes**

47 U.S.C. § 230(c)(1) ......................................................................................... 6, 7, 8

Communications Decency Act ................................................................................. 8

Communications Decency Act § 230 .............................................................. 1, 6, 7, 8

Consumer Legal Remedies Act .......................................................................... 1, 4, 5, 6

False Advertising Law ...................................................................................... 1, 5, 6

Song-Beverly Consumer Warranty Act ............................................................. 1, 5, 6

Unfair Competition Law ........................................................................................ 3, 4

- iii -

1  **I.      INTRODUCTION**

2          Plaintiff Michael Moates' Opposition ("Opp.") does not address the numerous pleading

3  deficiencies Meta Platforms, Inc. identified in its Motion to Dismiss ("Mot." or "Motion").  Nor

4  does Plaintiff explain what additional facts he could allege to overcome the fatal defects in his

5  Second Amended Complaint ("SAC").  In so doing, Plaintiff only underscores why his SAC fails

6  to assert a single viable claim for relief and why it should be dismissed *with prejudice.*

7          *First*, Plaintiff fails to contest—and thus concedes—that he has not stated a claim for

8  fraud, promissory estoppel, and for violations of the California Consumer Legal Remedies Act

9  ("CLRA"), California's False Advertising Law ("FAL"), and the California Song-Beverly

10  Consumer Warranty Act ("Song-Beverly Act").

11          *Second*, for the claims that Plaintiff *does* address in his Opposition, other than reiterating

12  the same conclusory allegations from his SAC, Plaintiff does not identify facts, make any

13  arguments, or otherwise attempt to address the deficiencies identified in Meta's Motion.  For

14  example, Plaintiff *still* fails to identify a provision in the Facebook Terms of Service (or any other

15  purported agreement) that Meta breached by disabling Plaintiff's Facebook account.

16          *Third*, as established in Meta's Motion, each of Plaintiff's claims is barred by Section 230

17  of the Communications Decency Act ("Section 230"), which protects interactive service

18  providers like Meta from claims based on removal of content or users from its services.  Each of

19  Plaintiff's claims—at bottom—seeks to hold Meta liable for disabling his Facebook account.

20  Plaintiff offers no plausible argument to the contrary.

21          Accordingly, for all the reasons stated in Meta's Motion to Dismiss, this Court should

22  dismiss Plaintiff's entire SAC with prejudice.

23  **II.     ARGUMENT**

24          **A.      The Complaint Fails to State Any Cause of Action Against Meta**

25                  **1.      Plaintiff's breach of contract claim fails**

26          Plaintiff's Opposition only underscores why his breach of contract claim fails.  Plaintiff

27  *still* does not identify a specific provision in the Terms of Service that Meta purportedly violated

28  by disabling his Facebook account, as is required to plead a breach of contract claim.  *See, e.g.,*

- 1 -

*Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim because plaintiff failed to identify a specific provision of the contract breached by defendant).  In fact, as explained in Meta's Motion (*see* Mot. at 4), there is no such provision in the Terms of Service that requires Meta to permit or maintain content on Facebook.  *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (Facebook's Terms do not obligate Facebook to continue providing access to Facebook).

   Plaintiff's Opposition does not dispute this deficiency.  Instead—because Plaintiff cannot point to any provision obligating Meta to allow Plaintiff on Facebook—he resorts to the flawed argument that the only contract at issue is the Terms of Service applicable when Plaintiff created his account.  But as explained in Meta's Motion (Mot. at 3), the Terms of Service in place when Meta disabled Plaintiff's account in October 2020—as Plaintiff alleges—also apply.  *See* RJN, Levin Decl., Exs. A, B (requiring users to acknowledge that by continuing to use Facebook, they assent to modifications in the Terms); *see Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 n.1 (N.D. Cal. 2022) (noting that users impliedly agree to the Terms of Service by using the Facebook platform).  And, in any event, the Terms of Service do not materially differ as to the pertinent obligations—*neither* version of the Terms of Service requires Meta to keep Plaintiff on Facebook, and they both allow Meta to *remove* Plaintiff from Facebook.  RJN, Levin Decl., Exs. A, B.

   Moreover, as explained in Meta's Motion (Mot. at 4), Plaintiff's breach of contract claim regarding his Oculus devices also fails because—*once again*—Plaintiff does not identify any provision in any contract that Meta breached by purportedly "rendering [his] Oculus devices inoperable." SAC ¶ 41; *see Young v. Facebook, Inc.*, 790 F.Supp.2d 1110 (N.D. Cal. 2011) (noting plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached).  And as explained further in Meta's Motion, each purported promise regarding Oculus comes from "advertising" stating that Oculus users would be able to "discover new adventures" and "travel universes in blockbuster fantasies."  SAC ¶ 41.  These

- 2 -

supposed "promises" do not come from the contract identified in the SAC—the Facebook Terms of Service—nor do they plausibly relate to the *purported* "breach" at issue—Meta requiring a Facebook account to use Oculus.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. July 30, 2009) (dismissing breach of contract claim because agreement did not "contain[] any promise by Google to enforce its terms of use").  In fact, as explained in Meta's Motion (Mot. at 5), Plaintiff cannot plausibly establish breach because—contrary to Plaintiff's claim—Meta did not make his Oculus device "inoperable" by requiring a Facebook account for use.  Rather, according to the August 2020 press release that Plaintiff includes in his SAC (SAC ¶ 29), existing users of Oculus "[could] continue using [their] Oculus account" without Facebook for a certain time period.  *See* SAC ¶ 29.  Meta goes on to clarify that "if you choose not to merge your accounts at that time, *you can continue using your device*, but full functionality will require a Facebook account." *See* SAC ¶ 29.

Accordingly, Plaintiff's breach of contract claim should be dismissed with prejudice.[1]

### 2.      **Plaintiff's Unfair Competition Law claim fails**

In his SAC, Plaintiff claims that Meta violated California's Unfair Competition Law ("UCL") by purportedly making his Oculus devices inoperable.  In his Opposition, rather than addressing any of Meta's arguments regarding his Oculus-related claims, Plaintiff asserts that he "allege[d] that Defendant engaged in unlawful and fraudulent business practices by failing to disclose its policies on account termination and data storage to its users."  Plaintiff's argument is without merit.

As an initial matter, Plaintiff's UCL claim does not allege anything about Meta's purported policies on "account termination or data storage."  *See* SAC ¶ 53.  In any event, far from "failing to disclose" such policies, the Facebook Terms of Service *expressly* grant Meta with the discretion to terminate Plaintiff's account.  RJN, Levin Decl., Ex. A, Section 4.2; *Cross v.*

---

[1] In Opposition, Plaintiff resorts to the erroneous argument that Meta breached a contract with Plaintiff by purportedly violating the implied warranties of merchantability and fitness for a particular purpose. Plaintiff's argument is misguided.  Breach of either implied warranty cannot support Plaintiff's breach of contract claim as they arise "by operation of law rather than contract."  *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 925 (N.D. Cal. 2018).

- 3 -

1    *Facebook, Inc.*, 14 Cal. App. 5th 190, 203 (2017) (the Terms of Service provide "in essence that

2    Facebook has the discretion to remove content that violates Facebook policies").  Moreover, as

3    explained further in Meta's Motion (Mot. at 5), Meta *expressly* disclaims liability for

4    "lost…information or data."  RJN, Levin Decl., Ex. A.  *See, e.g., King v. Facebook Inc.,* 2022

5    WL 1188873, at *6 (N.D. Cal. April 20, 2022) (enforcing Meta's limitation of liability provision

6    and finding it barred plaintiff's claim for special damages).

7           Moreover, to the extent Plaintiff's UCL claim is premised on Meta purportedly making

8    his Oculus devices inoperable, his claim fails.  As explained in Meta's Motion (*see* Mot. at 8-9),

9    any claim under the fraudulent prong fails because Plaintiff has not alleged sufficient facts to

10   show that Meta made a false or misleading statement regarding Oculus.  *See, e.g.*, *Garcia v. Sony*

11   *Computer Entm't Am, LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012) (dismissing UCL claim

12   where representations regarding console compatibility were not clearly "false at the time when

13   made").  Crucially, none of the purported advertising included in the SAC even discusses Meta's

14   requirements to use an Oculus device.  *See, e.g.*, SAC ¶ 53 ("Travel universes in blockbuster

15   fantasies…").  Further, any claim under the unfair prong fails because it "overlap[s] entirely with

16   [Plaintiff's] claims of fraud," and as such, cannot survive.  *Ahern v. Apple Inc*., 411 F. Supp. 3d

17   541, 561 (N.D. Cal. 2019) (dismissing unfair and fraud prong claims where both claims were

18   based on allegations that Apple failed to disclose that computers had certain defects).  Finally,

19   because Plaintiff fails to state a claim under any other law (*see* Mot. at [x]), he cannot allege a

20   violation of the UCL unlawful prong.  *I.B. ex rel. Fife v. Facebook, Inc.,* 905 F. Supp. 2d 989

21   (N.D. Cal. 2021) (dismissing UCL unlawful prong claim where court already held plaintiff's

22   CLRA claim failed).

23          Plaintiff does not address any of these deficiencies in his Opposition.  Accordingly,

24   Plaintiff's UCL claim should be dismissed with prejudice.[2]

---

[2] Confoundingly, Plaintiff claims that Meta asserted his "negligence claim should be dismissed because [he] failed to allege any duty owed by Defendant" to Plaintiff.  But Plaintiff did not bring a negligence claim—and naturally, Meta did not make any argument regarding any negligence claim.  To the extent the Court considers a negligence cause of action, Plaintiff has clearly failed to allege any of the requisite elements.  Indeed, any negligence claim would fail because Plaintiff has not alleged that Meta owed him a recognizable duty to keep him on Facebook, or that he suffered any cognizable damages.

3. **Plaintiff fails to address Meta's challenges to his claims for fraud, promissory estoppel, and for violations of the CLRA, FAL, and Song-Beverly Act**

Plaintiff fails to contest—*and thus concedes*—that he has not stated a claim for fraud, promissory estoppel, and for violations of the CLRA, FAL, the Song-Beverly Act.  *See, e.g.*, *King v. Facebook, Inc.*, 2021 WL 5279823, at *9 (N.D. Cal. Nov. 21, 2021) (dismissing breach of contract claim where plaintiff failed to respond to any of Facebook's contentions as to why specific performance was not a viable remedy, thus conceding the point).  Thus, for all the reasons identified in Meta's Motion—and reiterated here—those claims should be dismissed with prejudice.

*First*, as made clear in Meta's Motion, Plaintiff's **CLRA and FAL claims** fail because Plaintiff does not allege any facts establishing that Meta made a false representation regarding his Oculus devices.  *See, e.g.*, *Myers v. Starbucks Corp.*, 536 F.Supp.3d 657, 664 (C.D. Cal. May 5, 2021) (dismissing CLRA claim where plaintiff failed to allege specific facts showing the description of defendant's chocolate product was "false or misleading.").  Indeed, as explained in Meta's Motion (*see* Mot. at 6), the purported "misrepresentations" Plaintiff includes in the SAC relate only to the fun a user can experience when using Oculus—e.g., "[e]nter new realities, [t]ravel universes in blockbuster fantasies, scare yourself witless in horror adventures or collaborate with colleagues in innovative workspaces."  SAC ¶ 47.  *None of these purported promises* even plausibly relate to whether Plaintiff was required to have a Facebook account to use his Oculus devices.

*Second*, Plaintiff's **Song-Beverly Act claim** fails because he has not alleged *any of the requisite* elements of such a claim, including that the product had a "defect or nonconformity covered by the express warranty" or that he presented the product to "an authorized representative of the manufacturer for repair."  *Gonzalez v. Drew Industries Inc.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007).

*Third*, Plaintiff's **fraud claim** fails because, as explained in Meta's Motion (Mot. at 11), while Plaintiff asserts that Meta "made a false representation" by allegedly advertising that "the Oculus devices would function without requiring the use of a Facebook account," Plaintiff fails to

- 5 -

identify any such promise (nor could he, *see* Section IV.A.1, *supra*); *see, e.g.*, *Lloyd*, 2022 WL 4913347, at *7 (dismissing fraud claim without leave to amend where plaintiff failed to allege any specific representation made by Meta regarding removing content).  This alone is fatal to Plaintiff's fraud claim.  Further, Plaintiff does not allege facts establishing any of the other elements of fraud, including that (1) Meta knew its statements were false, (2) Meta intended to defraud him with those statements, or (3) he justifiably relied on those statements.  *See, e.g.*, *Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131, 1147 (N.D. Cal. 2013) (dismissing fraud claim where statement that Apple intended to mislead Plaintiff with representations about products provided no basis to infer that Apple made those statement with intent to defraud).

  *Finally*, Plaintiff's **promissory estoppel claim**—which alleges that Meta rendered his Oculus devices "inoperable"—fails because he does not identify a "clear and unambiguous promise" made by Meta to provide him with continuous access to Oculus.[3]  *Twit, LLC v. Twitter, Inc.*, 2018 WL 2431474, at *4 (N.D. Cal. May 30, 2018) (promise must be "definite enough that a court can determine the scope of the duty").

  Accordingly, for all the reasons identified in Meta's Motion—and ignored in Plaintiff's Opposition—Plaintiff's fraud, promissory estoppel, CLRA, FAL, and Song-Beverly Act claims should be dismissed with prejudice.

### B. Section 230 of the Communications Decency Act Bars Plaintiff's Claims

  As established in Meta's Motion (*see* Motion at 12-15), Plaintiff's claims also fail for the independent reason that they are barred as a matter of law under Section 230.  Plaintiff's Opposition does not contest that the first and third elements of Section 230 are satisfied for each of Plaintiff' claims—*i.e.*, (i) Meta is a "provider . . . of an interactive computer service[;]" and (ii) the claims treats Meta as the "publisher or speaker" of [the] content."  *See* 47 U.S.C. § 230(c)(1).  Plaintiff instead argues that Meta's reliance on Section 230 is misplaced because Meta engaged in

---

[3] The only "support" Plaintiff provides for the fact that Meta promised users they would *not* need a Facebook account to use Oculus comes from an August 20, 2020 opinion article cited in the SAC, *see* ¶ 29 (https://www.roadtovr.com/oculus-guarantee-promise-facebook-log-in/).  The article states that Oculus' founder (*not Meta*) posted on Reddit—*over eight years ago*—that "you won't need to log into your Facebook account every time you use the Oculus Rift."

"content moderation and editing" in "disabling Plaintiff's Facebook account."  Opp. at 9.

Plaintiff's argument fails.

### 1.  Section 230 applies to claims involving Plaintiff's own content

Plaintiff claims that Section 230 does not apply because his claims are based on "Defendants' own actions in disabling Plaintiff's Facebook account."  Opp. at 10.  According to Plaintiff, such claims are not based on "third-party content," making Section 230 inapplicable. *Id.*  Plaintiff's argument is misguided.  As explained in Meta's Motion, *see* Mot. at 13-14, for Section 230 to apply, the information for which Plaintiff seeks to hold Defendants liable must have been provided by an "information content provider" other than Defendants.  47 U.S.C. § 230(c)(1).  This inquiry is simple if—as here—the "complaint admits that [the plaintiff] is the source of the information that [Meta] removed" while "nowhere alleg[ing] that [Meta] provided, created, or developed any portion" of the content.  *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1035-6 (N.D. Cal. 2019).  Here, crucially, Plaintiff admits that Meta's decision to disable his account was made based on "the actions of the Plaintiff."  Opp. at 10.  Plaintiff's claims thus involve allegations that Plaintiff himself—*not Meta*—created the content (*i.e.,* his own accounts) at issue.  *See generally* SAC.   Meta's purported decision to "delete or block access to a user's individual profile falls squarely within" Section 230, as numerous courts have held.  *Zimmerman v. Facebook, Inc.*, 2020 WL 58778363 (N.D. Cal. Oct. 2, 2020); *see, e.g.*, *Fed. Agency of News LLC*, 432 F. Supp. 3d at 1119 (holding that the allegation that plaintiff "operate[s] a Facebook page through which [plaintiff] has published its posts" was an "admi[ssion] that [it] is the source of the information that Facebook removed"); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 (9th Cir. 2017) (dismissing discrimination claims under Section 230 based on Facebook's decision to remove plaintiff from Facebook in India); *Ebeid*, 2019 WL 2059662, at *7 (finding Section 230 applied where plaintiff was source of removed content).

### C.  Plaintiff Should Not Be Granted Leave to Amend

Plaintiff has already filed *six* different versions of his complaint with knowledge of the

- 7 -

1  deficiencies Meta identified—and Plaintiff has failed to cure them.  As explained in Meta's

2  Motion, leave to amend is inappropriate if "the pleading could not possibly be cured by the

3  allegations of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  Here,

4  leave to amend would be inappropriate for two reasons.

5        *First*, as established in Meta's Motion and above (*see* Section II.A., *supra*), Plaintiff has

6  failed to allege sufficient facts to state any claim and proposes no additional facts that could be

7  pled in a yet another amended complaint to assist his claims.  This is further illuminated by his

8  Opposition, which ignores most of Meta's arguments for dismissal, and otherwise merely

9  reasserts his SAC's faulty allegations.

10        *Second*, all of Plaintiff's claims will be barred as a matter of law by Section 230(c)(1) no

11  matter what additional facts he pleads (*see* Section II.B., *supra*).  Courts generally deny leave to

12  amend where there is CDA immunity, which cannot be "circumvent[ed]" with "creative

13  pleading."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016); *see, e.g., King*, 2021

14  WL 5279823, at *13 (dismissing claims barred by Section 230 with prejudice because "it would

15  be futile for [Plaintiff] to try to amend the claim[s]").  Further, the CDA "must be interpreted to

16  protect websites not merely from ultimate liability, but from having to fight costly and protracted

17  legal battles."  *Sikhs for Justice*, 144 F. Supp. 3d at 1088 (denying leave to amend where it would

18  be futile because claim was barred as a matter of law under Section 230); *Caraccioli*, 167 F.

19  Supp. 3d at 1067 (same).  It is thus apparent that any proposed "amendment would be futile" and

20  that the Court should dismiss the SAC with prejudice.  *Cervantes v. Countrywide Home Loans,*

21  *Inc.,* 656 F.3d 1034, 1041 (9th Cir. 2011).

22  **III.    <u>CONCLUSION</u>**

23        For the foregoing reasons, Defendants respectfully request that this Court dismiss the SAC

24  in its entirety, with prejudice.[4]

25

26  [4] Plaintiff asserts that Meta has engaged in "unethical behavior" because (1) "limited discovery was
    requested and denied," and (2) Meta attempted to schedule hearings that Plaintiff cannot attend and "made

27  false statements to the court regarding the ability to hold virtual hearings." Opp. at 10.  Plaintiff's
    allegations (*which Meta disputes*) are not relevant to the present motion and should be ignored.  In any

28  event, *the Court* stayed discovery in this matter pending outcome of Meta's Motion.  Moreover, *the Court*

- 8 -

1    Dated: May 10, 2023                          JACOB M. HEATH
                                                  ORRICK, HERRINGTON & SUTCLIFFE LLP
2

3

4                                       By:    _/s/ Jacob M. Heath_____
                                                  JACOB M. HEATH
5                                                 Attorney for Defendant
                                                  Meta Platforms, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
_____
27   has ultimately calendared all hearings in this action, and Meta simply followed the Court's guidance on the
     availability of virtual hearings.  Meta did not even oppose Plaintiff's request to appear at the hearing
28   virtually.  ECF No. 61.

1

**PROOF OF SERVICE**

2

     I am employed in the County of San Mateo, State of California.  I am over the age of 18

3

years old and not a party to this action.  My business address is Orrick, Herrington & Sutcliffe

4

LLP, 1000 Marsh Road, Menlo Park, California 94025.  On May 11, 2023, I served the following

5

document(s) entitled:

6

    1.  **DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

7

on all interested parties to this action in the manner described as follows:

8

9

               Michael Moates
               6004 Oakland Bend, #116

10

               Denton, TX 76112
               mike@cpmht.com

11

               (*pro se* Plaintiff)

12

☒    **(VIA EMAIL)** On May 11, 2023, via electronic mail in Adobe PDF format the document(s) listed above to the electronic address(es) set forth below.

13

☒    **(VIA U.S. MAIL)** On January 24, 2023 by placing a true copy of the document(s) listed

14

above in an envelope, with postage thereon fully prepaid, addressed as set forth below and then sealing the envelope and depositing it in the U.S. mail at Menlo Park, CA.

15

16

     I declare under penalty of perjury under the laws of the State of California and the United

17

States that the foregoing is true and correct.

18

     Executed on May 11, 2023, at Fremont, California.

19

20

                        */s/ Sema Virrueta*
                        Sema Virrueta

21

22

23

24

25

26

27

28